880 P.2d 1173

Robert W. MACK, Joylene Mack, Plaintiffs–Appellants,

v.

McDONNELL DOUGLAS HELICOPTER COMPANY, a Delaware corporation, McDonnell Douglas Corporation, a Delaware corporation, Defendants–Appellees.

Nos. 1 CA–CV 92–0066, 1 CA–CV 92–0104.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 13, 1994.

David C. Larkin, P.C. by David C. Larkin and Ulrich, Thompson & Kessler, P.C. by Paul G. Ulrich, Phoenix, for appellants.

Bryan Cave by Marshall W. Anstandig, Diane M. Dear and Carolann E. Cervetti, Phoenix, for appellees.

## OPINION

TOCI, Judge.

Robert W. Mack and his wife sued McDonnell Douglas Helicopter Company ("MDHC") and its parent company McDonnell Douglas Company ("MDC") (collectively, "defendants"), alleging negligence in implementing a corporate reorganization plan, breach of an implied-in-fact contract, and breach of the covenant of good faith and fair dealing. Mack appeals the trial court's dismissal before trial of his negligence claim.

This appeal raises one issue: Does an employer have a duty to its employees to exercise ordinary care in implementing a corporate management reorganization? We conclude that for at-will employees no such duty exists. We hold, therefore, that under Arizona law, Mack has no claim against his employer for negligent implementation of a corporate reorganization plan. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

■ Because this appeal arises from the trial court's grant of a motion to dismiss, we must consider the facts alleged in the complaint as true and determine whether the complaint, construed in a light most favorable to the plaintiff, sufficiently sets forth a valid claim. *Anson v. American Motors Corp.*, 155 Ariz. 420, 421, 747 P.2d 581, 582 (App.1987); *Sun World Corp. v. Pennysaver, Inc.*, 130 Ariz. 585, 586, 637 P.2d 1088, 1089 (App.1981).

From 1982 to 1989, Mack was employed by MDHC as director of public affairs. During his tenure at MDHC, Mack was praised for outstanding work and regularly received salary increases and incentive compensation. To the best of Mack's knowledge, his personnel file contained only positive comments from his superiors.

In late summer of 1989, MDC began an internal program of management reorganization known as Total Quality Management System ("TQMS") devised by MDC. Under this reorganization program, approximately 800 vice-presidents, directors, and managers were required to resign from their jobs and reapply for their former positions or up to three management positions. During ten-minute interviews, two different assessment committees evaluated each applicant. These assessment committees were composed of five to six of the applicant's peers and five to six of the applicant's subordinates. The committees rated management applicants using a list of fifteen TQMS standards.

Because the director of public affairs position was one of the first eight management positions to be filled, Mack was one of the first persons to be evaluated under the TQMS program. Although Mack's record was very good, critical comments from the assessment committees kept him from returning to his former position. The person who ultimately replaced Mack as director of public affairs had no public affairs experience and served on both committees that evaluated Mack.

In October 1989, following his TQMS evaluation, Mack was demoted and assigned to a team that worked on a proposal for a new United States Army helicopter program. In his new position, Mack was vulnerable to layoffs, cutbacks, and job insecurity that he would not have faced in his previous public affairs position. He was laid off in August 1990, when the team he worked with completed the proposal for the new Army helicopter program.

In July 1991, Mack filed a complaint in Maricopa County Superior Court against both MDHC and MDC. Mack asserted three claims: (1) negligence in implementing the reorganization against both MDHC and MDC; (2) breach of an implied-in-fact contract against MDHC; and (3) breach of a covenant of good faith and fair dealing against MDHC. In his negligence claim, Mack asserted that defendants had a duty to use ordinary care in properly applying the reorganization and TQMS program to him. Mack further alleged that defendants negligently breached their duty to him by incorrectly carrying out the reorganization and by improperly demoting him. Mack contends that as a result of this breach, he suffered damages consisting of loss of wages, incentive compensation, and employment benefits, such as health and accident insurance and a retirement plan.

Pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure, defendants filed a motion to dismiss Mack's negligence claim for failure to state a claim upon which relief could be granted. They argued that Arizona does not recognize a cause of action for negligence in implementing management decisions. The trial court agreed. Granting defendants' motion to dismiss the negligence claim, the court stated:

**THE COURT FINDS** no Arizona authority to support such a claim of negligence. An at will employee in Arizona can be laid·off subject only to the contractual limitations of his employment and subject to the employer not terminating for an improper constitutional or public policy reason. There is no law in this state or anywhere else that this Court can find that an employee can bring action on negligence for a company decision which ultimately puts him or her in a position where

they are subject to stratified layoff. The employee either has contractual, constitutional or public policy rights, but there is no obligation or duty with regard to employment rights of the nature here involved which would allow a claim of negligence.

The trial court entered a final judgment, pursuant to Rule 54(b), Arizona Rules of Civil Procedure, dismissing Mack's negligence claim. Mack appeals.

## II. DISCUSSION

On appeal, Mack argues that defendants had a duty, distinct from any contractual obligation, to use ordinary care in implementing the reorganization plan and in applying the TQMS program to him. Mack asserts that defendants negligently breached their duty to him because they did not anticipate the potential conflict of interest from competitors for Mack's position serving on the assessment committees. Further, Mack contends that defendants acted negligently because, in their haste to implement the TQMS program, defendants borrowed assessment facilitators from outside MDHC who were not fully trained in the TQMS program.

We begin our analysis by examining the principles of negligence. Generally, a plaintiff may maintain a negligence action if he proves: (1) a duty or obligation recognized by law requiring the defendant to conform to a certain standard of conduct to protect others from unreasonable risks; (2) a failure on the defendant's part to conform to the standard required, i.e., a breach of that duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage. *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983).

The threshold issue of whether a defendant owed any duty of care to a plaintiff is usually decided by the court as a matter of law. *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985); *Bellezzo v. State,* 174 Ariz. 548, 550, 851 P.2d 847, 849 (App.1992). "The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to

the plaintiff." *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368. Thus, a legal duty "arises out of the recognition that relations between individuals may impose upon one a legal obligation for the benefit of the other." *Ontiveros,* 136 Ariz. at 508, 667 P.2d at 208. A defendant who owes no duty to the plaintiff is not liable for the plaintiff's injury even if the defendant acted negligently. *Easter v. Percy,* 168 Ariz. 46, 48, 810 P.2d 1053, 1055 (App.1991).

Mack contends that his employee relationship with MDHC created and defined defendants' duty. The question, then, is whether this employment relationship obligated defendants to exercise reasonable care in implementing the reorganization to avoid or prevent injury to Mack. We conclude that it did not.

We find that Mack's employment relationship with MDHC was one of an employee at-will; Mack does not allege that his relationship with MDHC was otherwise. *See Woerth v. City of Flagstaff,* 167 Ariz. 412, 416, 808 P.2d 297, 301 (App.1990) ("In Arizona, employment is presumed 'at-will' in the absence of a definite term of employment."). As an employee at-will, Mack's employment could be terminated at the pleasure of either Mack or his employer. *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 375–76, 710 P.2d 1025, 1030–31 (1985). Thus, MDHC was free to fire Mack for good cause or for no cause. *Id.* at 376, 710 P.2d at 1031.

Arizona does, however, recognize one tort exception to the at-will rule: "Firing for bad cause—one against public policy articulated by constitutional, statutory, or decisional law—is not a right in the at-will contract, or in any other contract, even if expressly provided." *Id.* at 381, 710 P.2d at 1036. Such termination violates rights guaranteed to the employee by law and subjects the employer to tort liability. *Id.* Thus, even in an at-will employment situation, an employer has a duty to the employee to refrain from terminating his or her employment for bad cause.

Mack argues that his claim is not for the termination of his employment with MDHC

by layoff, but rather for the demotion that led to his vulnerability to future layoffs. We have found no Arizona case that applies the *Wagenseller* principles to employee demotions. For purposes of our analysis in this case, however, we assume, without deciding, that these principles apply to employee demotions as well as employee terminations. Thus, in the absence of any contractual provision to the contrary, MDHC was free to demote Mack for good cause or for no cause, but could not demote him for a reason that violated public policy.

■ But Mack has not alleged that MDHC demoted him in violation of public policy. Rather, Mack argues that defendants applied the TQMS to him unfairly. It is true that some employer actions that may be characterized as "unfair" to employees may also violate public policy. *See, e.g.,* the Arizona Civil Rights Act, Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 41–1461 through 41–1465 (1992), which prohibits employment discrimination; the Arizona Occupational Safety and Health Act of 1972, A.R.S. § 23–425 (1983), and the Arizona Agricultural Employment Relations Act, A.R.S. § 23–1385, which prohibit retaliatory discharge and discrimination; and other statutes that protect employees from retaliation when they exercise voting rights (A.R.S. § 16–1012 (1984)) and participate in military duty (A.R.S. § 26–167 (1991)) and jury duty (A.R.S. § 21–236 (1990)). Nevertheless, Mack cites no authority for the proposition that, in absence of a public policy violation, an employer has a non-contractual duty of fairness to an employee and that a breach of such duty is actionable negligence.

Mack, however, relies on three Montana cases for the proposition that Arizona should recognize the tort claim of negligent implementation of a management decision, including negligent implementation of a corporate reorganization plan. *See Kizer v. Semitool, Inc.,* 251 Mont. 199, 824 P.2d 229 (1991); *Flanigan v. Prudential Fed. Sav. & Loan Assoc.,* 221 Mont. 419, 720 P.2d 257 *appeal dismissed,* 479 U.S. 980, 107 S.Ct. 564, 93 L.Ed.2d 570 (1986); *Crenshaw v. Bozeman Deaconess Hosp.,* 213 Mont. 488, 693 P.2d 487 (1984).

■ We are not persuaded by these cases. First, the holdings in *Kizer* and *Flanigan* were based on the fact that the employers violated their own written employment policies. *Kizer,* 824 P.2d at 236; *Flanigan,* 720 P.2d at 263. Mack does not allege the existence of any MDHC or MDC employment policies that would have protected him in the event of company reorganization. Furthermore, under Arizona law, claims regarding violations of such policies would sound in contract, not in tort. *See Smith v. American Express Travel Related Servs. Co.,* 179 Ariz. 131, 140–141, 876 P.2d 1166, 1175–76 (App. 1994); *Woerth,* 167 Ariz. at 417–18 n. 7, 808 P.2d at 302–03 n. 7.

In addition, as is clear from *Crenshaw,* Montana has broader employee rights in termination cases than does Arizona. For example, the *Crenshaw* court allowed a claim for breach of the implied covenant of good faith and fair dealing in an employment termination because, in Montana, that covenant arises out of the employment relationship and exists "apart from, and in addition to, any terms agreed to by the parties." *Crenshaw,* 693 P.2d at 490–91, 493. This is contrary to the conclusion reached by our supreme court in *Wagenseller,* 147 Ariz. at 385, 710 P.2d at 1040. *See also Lambert v. Morehouse,* 68 Wash.App. 500, 843 P.2d 1116, 1119 (1993) (rejecting *Flanigan* and *Crenshaw* because Montana, unlike Washington, recognizes implicit covenant of good faith and fair dealing in at-will employment contracts).

Finally, even the Montana Supreme Court has rejected the argument that an employer can be held liable in tort for negligently implementing a reduction-in-force. *Heltborg v. Modern Machinery,* 244 Mont. 24, 795 P.2d 954, 961 (1990). There, the court held that a breach of the covenant of good faith and fair dealing involves intentional rather than negligent conduct. The Montana court concluded that a "management decision to implement a reduction in force for economic reasons is not susceptible to a negligence analysis by a jury." *Id.*

Courts in other jurisdictions have reached similar the same result. *See, e.g., Rush v. United Technologies, Otis Elevator Div.,* 930

F.2d 453, 455–56 (6th Cir.1991) (plaintiff's tort claim for negligent evaluation of expense account practices could not exist under Michigan law because the plaintiff did not claim that defendant had "caused any harm in the realm beyond the contract"); *Haas v. Montgomery Ward and Co.*, 812 F.2d 1015, 1016–17 (6th Cir.1987) (Sixth Circuit held that employee cannot maintain an action in tort for negligent discharge based on claim of negligent evaluation of job performance); *Shaver v. F.W. Woolworth Co.*, 669 F.Supp. 243, 244–45 (E.D.Wis.1986), *aff'd*, 840 F.2d 1361 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988) (U.S. District Court held that public policy of Wisconsin does not compel recognition of cause of action for negligence in employment termination cases).

Similarly, in *Mann v. J.E. Baker Co.*, 733 F.Supp. 885 (M.D.Pa.1990), the United States District Court, applying Pennsylvania law, dismissed a negligence claim brought by an employee against her former employer based on an evaluation of the employee's job performance. Mann alleged that favorable job performance evaluations conducted by her former employer caused her to continue poor work habits and resulted in her eventual termination. *Id.* at 887. Like Mack in this case, Mann "carefully emphasize[d] that she d[id] not consider the negligent evaluation a breach of contract," but rather, "[t]he claim ar[ose] simply from the breach of the duty to conduct the evaluation properly." *Id.* at 888.

The *Mann* court, however, declined to create a new tort claim based on a negligent evaluation of an employee's job performance. The court found that Mann was an at-will employee and that she was attempting to use a negligence claim to enforce rights arising solely from her contractual relationship with the employer. The court explained that the "fatal difficulty" for Mann was that her employment could have been ended at any time for any reason if not proscribed by statute or public policy. *Id.* at 889.

We find the reasoning in these cases persuasive and in agreement with Arizona law to the extent that they hold that an at-will employee may not use negligence or other tort claims to gain rights not granted by an employment contract. In this case, Mack did not allege that MDHC demoted him in violation of public policy thereby giving rise to a claim sounding in tort. *See Wagenseller*, 147 Ariz. at 377–81, 710 P.2d at 1032–36; *Woerth*, 167 Ariz. at 418, 808 P.2d at 303. In the absence of a tort claim recognized by *Wagenseller*, Mack's effort, to enlarge his employment rights through the device of a negligence action, must fail.

## III.  CONCLUSION

Defendants seek an award of attorneys' fees based on Mack's alleged violation of Rule 13(a)(4), Arizona Rules of Civil Appellate Procedure, in his opening brief. We deny this request.

We conclude that because Mack was an at-will employee, defendants did not have a duty to Mack to exercise ordinary care when it implemented a corporate management reorganization. We hold that Mack has no claim under Arizona law for negligent implementation of a reorganization plan. We, therefore, affirm.

WEISBERG, P.J., and CONTRERAS, J., concur.