[No. A066778. First Dist., Div. Five. Oct. 27, 1997.]

ALENE M. SULLIVAN, as Special Administrator, etc., Plaintiff and Respondent, v.
DELTA AIR LINES, INC., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Bronson, Bronson & McKinnon, Gilmore F. Diekmann, Jr., Patricia H. Cullison, Jose H. Garcia, and J. Michael Garner for Defendant and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, William J. Sayers and Caroline E. Chan as Amici Curiae on behalf of Defendant and Appellant.

Kazan, McCalin, Edises, Simon & Abrams, Dianna Lyons and Ralph C. Petersen for Plaintiff and Respondent.

Rose, Klein & Marias, David A. Rosen, Wartnick, Chaber, Harowitz, Smith & Tigerman, Harry F. Wartnick, Ian Herzog, Douglas Devries, Leonard Sacks, Bruce Broillet, Thomas Stolpman, Robert B. Steinberg, Roland Wrinkle, Gary Paul, Steven Kleifield, Harvey Levine, Mary E. Alexander, Wayne McClean, William Turley, David Casey, Tony Tanke and Daniel U. Smith as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

JONES, J.—Delta Air Lines, Inc., (Delta) appeals from a judgment entered on a jury verdict awarding damages to Joseph A. Sullivan[1] (Sullivan) for wrongful termination in violation of the public policy found in Labor Code section 1025 of the Alcohol and Drug Rehabilitation Act (ADRA) (Lab. Code, § 1025 et seq.),[2] for violation of section 1025, and for tortious intrusion into privacy. In the published portion of the opinion, we hold that a violation of section 1025 cannot support a cause of action for tortious wrongful termination. In the unpublished portion, we hold that Sullivan did not exhaust his administrative remedies as required before making a direct

---

[1] Plaintiff Joseph A. Sullivan died while this appeal was pending, and his mother Alene M. Sullivan, acting as special administrator of his estate, has been substituted as plaintiff and respondent.

[2] All statutory references are to the Labor Code, unless otherwise indicated.

claim under section 1025, and that the claim for intrusion into privacy was filed after the one-year statute of limitations had run. Consequently, the judgment must be reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

Sullivan was employed by Delta until his discharge in 1991. In the two years before his discharge, Sullivan struggled with alcohol and drug abuse and was diagnosed as HIV positive. With Delta's financial support, Sullivan participated in two successive, progressively more intensive inpatient alcohol rehabilitation programs. The second was followed by Sullivan's participation in a residential rehabilitation program after he returned to work at Delta. In late September 1991, Sullivan's violation of house rules led to his discharge from the residential treatment program. He then checked himself into a hospital for inpatient psychological treatment, and, after being released by his doctor to return to work, refused to return to work when ordered by Delta. Delta suspended his employment on October 9, terminated him on October 17, and this suit followed.

Sullivan sued Delta on multiple legal theories arising from the termination of his employment. His second amended complaint contained 14 causes of action. Seven survived pretrial motions, and the jury found Delta liable on three: the second cause of action for tortious intrusion into privacy, the fourth cause of action for tortious discharge in violation of the public policy of section 1025, and the fifth cause of action for violation of section 1025 itself. The jury awarded Sullivan $275,000 for emotional distress. It was unable to reach a decision on the sixth cause of action for employment discrimination based on physical handicap related to HIV infection in violation of the Fair Employment and Housing Act (FEHA). The jury also deadlocked on whether punitive damages were appropriate for the fifth cause of action, Delta's violation of section 1025.

The trial court granted judgment notwithstanding the verdict on the issue of whether the evidence supported a punitive damages finding for the section 1025 violation, but otherwise denied Delta's motion for judgment notwithstanding the verdict and/or a new trial. It also granted Sullivan's motion for a retrial on the sixth cause of action.

Sullivan died on February 19, 1995, during the initial briefing on appeal. His mother was substituted as plaintiff and respondent. This court initially reversed the trial court's judgment on the grounds that emotional distress damages could not be awarded if plaintiff died before the appeal concluded. The California Supreme Court reversed in *Sullivan* v. *Delta Air Lines, Inc.* (1997) 15 Cal.4th 288 [63 Cal.Rptr.2d 74, 935 P.2d 781].

The Supreme Court also resolved an issue regarding the finality of the trial court's judgment and accepted respondent's waiver of the right to a retrial on the sixth cause of action. As a result, the Supreme Court directed us to "amend the judgment of the trial court to reflect the rendition of judgment for defendant on counts 1, 3, 7, 8, 9, 10, 11, 12, 13, and 14, and the dismissal of count 6 with prejudice, all nunc pro tunc as of May 10, 1994; and . . . address the merits of the appeal, allowing the parties the opportunity to file supplemental briefs if they so request." (*Sullivan* v. *Delta Air Lines, Inc.*, *supra*, 15 Cal.4th at p. 309.) Having received no requests to file supplemental briefs, we hereby amend the trial court judgment as directed and now decide the merits of Delta's appeal based on the parties' original briefs.

## DISCUSSION

I. *Wrongful Termination in Violation of Public Policy Based on Section 1025*

A. *The "Substantial and Fundamental" Public Policy Requirement.*

Our Supreme Court recently reexamined and restated the elements of a cause of action for tortious wrongful discharge in violation of fundamental public policy in *Stevenson* v. *Superior Court* (1997) 16 Cal.4th 880, 887-890 [66 Cal.Rptr.2d 888, 941 P.2d 1157] (*Stevenson*). ▉ A tortious discharge claim requires that the employee be discharged in violation of a policy that is: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." (*Id.* at p. 894.) Appellant questions whether the policies underlying section 1025 meet the second and third requirements, i.e., that the policy be public and well established. ▉ We do not reach these issues, however, because we conclude that the policies expressed by section 1025 are not substantial and fundamental.

In *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*), the Supreme Court explained why a policy supporting a recovery for tortious discharge must be substantial and fundamental. "[D]espite its broad acceptance, the principle underlying the public policy exception is more easily stated than applied. The difficulty, of course, lies in determining where and how to draw the line between claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee. This determination depends in large part on whether the public policy alleged is sufficiently clear to

provide the basis for such a potent remedy. In *Foley* v. *Interactive Data Corp.* [(1988)] 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], we endeavored to provide some guidelines by noting that the policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer; in addition, the policy must be 'fundamental,' 'substantial' and 'well established' at the time of the discharge. (*Id.* at pp. 669-670.)" (*Gantt, supra,* 1 Cal.4th at p. 1090.) An employer may only be fairly burdened with tort liability when it violates a public policy that is substantial and fundamental. "The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees are protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded." (*Id.* at p. 1095.)

■ Thus, the primary rationale for requiring that a public policy be substantial and fundamental is "to ensure that employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge." (*Stevenson, supra,* 16 Cal.4th at p. 889; see *Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 135-136 [32 Cal.Rptr.2d 275, 876 P.2d 1074] (*Jennings*).) A corollary of the substantial and fundamental requirement, then, is that a " 'constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law.' " (*Turner* v. *Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1256, fn. 9 [32 Cal.Rptr.2d 223, 876 P.2d 1022] (*Turner*), quoting *Sequoia Ins. Co.* v. *Superior Court* (1993) 13 Cal.App.4th 1472, 1480 [16 Cal.Rptr.2d 888] (*Sequoia*); see *Gould* v. *Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147 [37 Cal.Rptr.2d 718] (*Gould*) [fundamental policy must be " 'sufficiently clear' to the employer at the time of the discharge . . . ."].)

The emphasis on sufficient notice to employers is reflected in the Supreme Court's analysis in *Stevenson*. *Stevenson* did not articulate a general test for determining whether a policy is substantial and fundamental, but did identify "certain considerations that lead us to conclude that the FEHA's policy against age discrimination in employment is indeed fundamental." (*Stevenson, supra,* 16 Cal.4th at p. 895.) These considerations can be grouped into two categories of factors that provide clear notice to employers that a discharge in violation of the policy will lead to liability in tort. The first factor is the similarity between the policy and other policies that have already been declared by the courts to be substantial and fundamental: the

policies against race and sex discrimination. (*Id.* at p. 896.) The second factor is broad and consistent legislative and statutory support for the policy. (*Id.* at pp. 896-897.) As we shall explain, our analysis of the notice provided to employers, including application of the factors emphasized in *Stevenson*, leads to the conclusion that the policy expressed by section 1025 is not substantial and fundamental.

### B. *Section 1025 Does Not Express a "Substantial and Fundamental" Public Policy*

Sullivan's fourth cause of action seeks tort damages for wrongful termination in violation of the public policy expressed by the ADRA. (§§ 1025-1028.) The jury found that Delta terminated Sullivan's employment in violation of the public policy found in section 1025.[3] Section 1025's first sentence requires that "[e]very private employer regularly employing 25 or more employees shall reasonably accommodate any employee who wishes to voluntarily enter and participate in an alcohol or drug rehabilitation program, provided that this reasonable accommodation does not impose an undue hardship on the employer." (§ 1025.) However, the second sentence of section 1025 reaffirms an employer's right to fire an employee for alcohol or drug use. It states that the ADRA does not prohibit an employer from "discharging an employee who, because of the employee's current use of alcohol or drugs, is unable to perform his or her duties, or cannot perform the duties in a manner which would not endanger his or her health or safety or the health or safety of others." (§ 1025.) Reading the two sentences of section 1025 together, the ADRA expresses three potentially conflicting policies: accommodation of employees involved in alcohol and drug rehabilitation programs, avoidance of undue hardship on employers, and intolerance to alcohol and drug use that interferes with employee performance.[4]

---

[3]The ADRA also protects the privacy of an employee that has informed an employer that he or she has enrolled in a rehabilitation program (§ 1026), relieves the employer of any obligation to provide time off with pay for participation in a program, but allows the employee to use earned sick leave (§ 1027), and designates an administrative forum for complaints of alleged violations of the ADRA (§ 1028). The jury found that Delta had complied with section 1026, and the last two sections were not the subject of jury findings.

[4]We emphasize that this appeal does not concern discrimination based on disability or medical condition. The jury found for Delta on two FEHA antidiscrimination causes of action, and the respondent abandoned the appeal of the FEHA cause of action on which the jury deadlocked. (*Sullivan* v. *Delta Air Lines, Inc., supra,* 15 Cal.4th at pp. 308-309.) Thus, the only basis for tortious wrongful termination in this appeal is violation of the public policy in section 1025.

We note that there is no explicit declaration of the significance of section 1025's policies in either the Constitution or the ADRA.[5] The Legislature also chose not to impose criminal sanctions for violation of section 1025.[6] In fact, it is difficult to determine precisely what employer conduct section 1025 prohibits. It contains multiple conflicting undefined standards for employer conduct. First, the employer must "reasonably accommodate" the employee's rehabilitation program. Second, however, the employer may avoid any obligation under the section if compliance would create an "undue hardship." Although the Legislature's statement of policy enacted with the ADRA adds elements for an employer to consider when trying to decide what is reasonable accommodation and what is an undue hardship, it still does not either prohibit or recommend any specific employer conduct.[7] The problem of identifying prohibited employer conduct is compounded by section 1025's broad grant of authority to employers to discharge employees for deficient performance caused by the same condition that precipitates the need for accommodation.[8] Considered in its entirety, section 1025 expresses competing objectives which an employer must balance in attempting to accommodate the alcohol or drug rehabilitation efforts of an employee. Section 1025's undefined and potentially contradictory standards of conduct are insufficient to " '. . . enable an employer to know the fundamental

---

[5]The Legislature did enact a statement of policy to accompany the ADRA, but it only contains interpretive guidance and is silent as to the significance of the policies of the ADRA. "It is the intent of the Legislature that employers subject to this act reasonably accommodate employees by providing time off necessary to participate in an alcoholic rehabilitation program when this will not impose an undue hardship on the employer. In determining whether providing the necessary time off would impose an undue hardship it is the intent of the Legislature that the size and type of the employer and facility, the nature and cost of the accommodation involved, notice to the employer of the need for the accommodation, and any reasonable alternative means of accommodation be considered." (Stats. 1984, ch. 1103, § 2, p. 3729.)

[6]In a number of cases, the prospect of criminal sanctions to punish the violation of a policy has been a significant factor in the determination that a policy is substantial and fundamental. (See, e.g., *Gantt, supra,* 1 Cal.4th at p. 1097 [Gov. Code, § 12975]; *Finch* v. *Brenda Raceway Corp.* (1994) 22 Cal.App.4th 547, 554 [27 Cal.Rptr.2d 531] [§ 971]; *Holmes* v. *General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1432-1433 [22 Cal.Rptr.2d 172] [18 U.S.C. § 1001].) This follows logically from the due process requirements for criminal statutes. To satisfy constitutional due process standards, a statute imposing criminal liability "must be definite enough to provide a standard of conduct for those whose activities are proscribed." (*People* v. *Heitzman* (1994) 9 Cal.4th 189, 199 [37 Cal.Rptr.2d 236, 886 P.2d 1229].) Thus, when the act of violating the public policy inherent in a statute is properly defined as a crime, the employer will have sufficient notice of the prohibited conduct to permit imposition of tort liability when it discharges an employee for violating the policy.

[7]See footnote 4, *ante.* This general language is much less informative to the employer than the definitional sections accompanying the FEHA. (See Gov. Code, § 12926, subds. (m), (p).)

[8]Contrast the FEHA provision prohibiting discrimination against employees with mental or physical disabilities, which only authorize discharge if reasonable accommodations are impossible. (Gov. Code, § 12940, subds. (a)(1)-(2).)

public policies that are expressed in that law.' " (*Turner, supra*, 7 Cal.4th at p. 1256, fn. 9.)

In our view the policy of requiring reasonable accommodation of an employee's alcohol or drug rehabilitation efforts does not resemble other public policies which have been found to support a cause of action for tortious discharge. The contrast with the policies discussed in *Stevenson* is especially illuminating. An employee's voluntary participation in an alcohol or drug rehabilitation program does not reflect an immutable characteristic like race, gender or age. (Cf. *Stevenson, supra*, 16 Cal.4th at p. 896.) Rehabilitation involves an employee's positive choice to overcome an addiction, whereas the Supreme Court has emphasized that race, gender and age deserve special protection precisely because they are not the products of free choice. (*Ibid.*)

Section 1025 also differs from the policy at issue in *Stevenson* because the ADRA is not buttressed by other consistent constitutional or statutory provisions. There is no recognized constitutional right of an employee to voluntarily enter a drug or alcohol rehabilitation program. The Legislature has not given the policy behind section 1025 the same broad recognition as the fundamental public policy against race, gender, and age discrimination. Discrimination against participants in alcohol and drug rehabilitation programs has not been grouped with race, gender and age discrimination in the provisions of the FEHA.

Section 1025 appears to be unique among California's statutes in providing qualified job protection when an employee chooses to participate in an alcohol or drug rehabilitation program. Although there are statutes encouraging participation in rehabilitation programs for a variety of categories of individuals (Bus. & Prof. Code, § 1695 [dentists]; Bus. & Prof. Code, § 2340 [physicians and surgeons]; Bus. & Prof. Code, § 2360 [osteopaths]; Bus. & Prof. Code, § 2497.1 [podiatrists]; Bus. & Prof. Code, §§ 2662-2663 [physical therapists]; Bus. & Prof. Code, § 2770 [nurses]; Bus. & Prof. Code, §§ 3534-3534.1 [physician assistants]; Bus. & Prof. Code, § 4360 [pharmacists]; Bus. & Prof. Code, § 4860 [veterinarians]; Ed. Code, § 48916.5 [expelled students]; Pen. Code, § 647d [repetitive intoxication offenders]), none protect employment rights. In light of the multitude of statutes punishing alcohol and drug use (see, e.g., Pen. Code, § 647, subd. (f) [public intoxication], Veh. Code, §§ 23152-23153 [driving while intoxicated]), and the case law establishing an employer's right to test for suspected drug and alcohol use (*Loder* v. *City of Glendale* (1997) 14 Cal.4th 846 [59 Cal.Rptr.2d 696, 927 P.2d 1200]; *Kraslawsky* v. *Upper Deck Co.* (1997) 56 Cal.App.4th 179 [65 Cal.Rptr.2d 297]), we cannot say that California maintains a consistent policy promoting the continued employment of employees undergoing alcohol and drug rehabilitation.

We conclude that the policy underlying the ADRA's prohibition of employment discrimination based on voluntary participation in a rehabilitation program does not support a common law tortious discharge claim. In short, the statute attempts to protect both the rights of the employer and the employee, and in doing so does not clearly prohibit any specific employer conduct. Its policy is not reflected elsewhere in California's Constitution or statutes. As the Supreme Court cautioned in *Stevenson*, "[b]ecause different forms of employment discrimination may be prohibited for different reasons and because the policies underlying different prohibitions may vary in strength, the conclusion that a prohibition of one form of employment discrimination will support a common law wrongful discharge claim does not necessarily mean that a prohibition of a different form of employment discrimination will do likewise." (*Stevenson, supra*, 16 Cal.4th at p. 902.)

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment against appellant is reversed. Costs to appellant.

Peterson, P. J., and Haning, J., concurred.

*See footnote, *ante*, page 938.