985 P.2d 629

### Gary F. LLOYD, Plaintiff–Appellant,

v.

### AMF BOWLING CENTERS, INC., a foreign corporation, Defendant–Appellee.

#### No. 1 CA–CV 97–0591.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 22, 1999.

Review Denied Sept. 21, 1999.

The electors are entitled to exercise their rights based on full knowledge of the challenged legis-

Lee, Stegall & Katz, P.C. by Philip B. Whitaker, Phoenix, Attorneys for Plaintiff–Appellant.

Surrano & Massey, P.C. by Charles J. Surrano, III John N. Wilborn, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Appellant, Gary Lloyd, appeals from summary judgment granted in favor of his

lative action.

employer, AMF Bowling Centers, which found that his firing by AMF did not constitute wrongful termination. We affirm.

## FACTS AND PROCEDURAL HISTORY [1]

¶ 2 Lloyd was the head mechanic for AMF. He was responsible for maintaining the technical operations of the bowling alley and for supervising the other mechanics. Lloyd normally worked weekdays from 7:00 a.m. to 3:00 p.m. Although the record is not entirely clear regarding his obligation to cover for the other mechanics, Lloyd acknowledged that "the operation of the machines was his responsibility," that "if someone . . . fell over and died" it would have been his responsibility to replace him or her, and that he, therefore, might have to cover. Notwithstanding, Lloyd had never been unexpectedly called in to work during his employment by AMF. On the other hand, upon prior notice he occasionally did have to fill in for the other mechanics.

¶ 3 In November 1995, Lloyd took a one week vacation. On Saturday, November 11, the day after the end of his vacation, Lloyd received a phone call from Arthur Faiello, a pin mechanic, who told him that he was sick and asked if he could go home. Lloyd told Faiello that he could, even though that would leave no mechanic at the bowling center, because Lloyd believed he could "afford" to let Faiello go at that time of day and because Faiello's replacement was expected to arrive within a few hours. Lloyd testified that Faiello asked him to come to work to "cover his shift," but that he told Faiello he did not have anyone to watch his son.

¶ 4 Approximately ten minutes after his conversation with Faiello, Lloyd received a call from Kenneth Stump, AMF's assistant manager, who asked Lloyd if it was really

okay if Faiello went home because that would "leave nobody in the back." Lloyd testified that he told Stump that was okay because they had "a very minimal amount of lanes running at the time" and "nothing scheduled until later that night" as far as bowling leagues were concerned. When Lloyd arrived at work on Monday, Harry Kees, AMF's manager, fired him.

¶ 5 Lloyd testified that he had explained to Faiello that he could not come to work because he had no one to look after his four-year-old son.[2] Lloyd also testified that he had been unable to contact his teenage daughter, who sometimes cared for the children, because she was out with friends; that he had no one else with whom he could have left his son; and that he did not take his children to work with him. According to Kees's testimony, when he talked to Lloyd on Monday, Lloyd said that the reason he could not go to work on Saturday was because he was still on vacation but he also said it was because he could not get a babysitter. Kees also testified that he understood from others that Lloyd had not gone to work on Saturday because he could not get a babysitter.

¶ 6 Kees explained that there had been other problems with Lloyd's performance and that his failure to come to work on Saturday was "the straw that broke the camel's back." Kees also stated that "the biggest reason [for the termination] was the fact that [Lloyd] didn't come to work when there was nobody to cover the back end."

¶ 7 Lloyd filed a complaint[3] alleging wrongful termination in which he claimed that he had been fired because he had refused to cover the Saturday shift and leave his two[4] young children home alone. Lloyd asserted that his termination violated public

---

1. On appeal from a summary judgment, we view the facts and reasonable inferences therefrom in the light most favorable to the party against whom the judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

2. Lloyd has three children, who were then ages 4, 10, and 13 respectively.

3. Lloyd's complaint also alleged claims for breach of contract, breach of the covenant of

good faith and fair dealing, failure to pay wages owed him, and punitive damages. On September 22, 1997, the parties filed a stipulation dismissing the breach of contract claim and advising the trial court that the unpaid wages claim had been satisfied.

4. In his deposition, Lloyd stated that he had to stay home with his son. In his complaint, he refers to having to stay home with his two young children.

policy because it would have required him to leave his children unattended, thereby committing a criminal act pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 13–3619 (neglect) and 13–3623 (child abuse), which make it a criminal offense for a person having custody of a minor to knowingly cause or permit the life of such minor to be injured or its moral welfare imperiled by neglect, abuse or immoral associations or permit a child to be placed in a situation where its person or health is endangered.

¶ 8 Both Lloyd and AMF filed motions for summary judgment. The trial court denied Lloyd's motion for partial summary judgment on the wrongful termination claim. The court reasoned that terminating an employee for failing to appear for work at the employer's request, albeit for an unscheduled shift, does not violate public policy, "even if the employer was advised that the reason the employee cannot come to work was because he has two small children to care for." The court concluded that, absent a breach of public policy, there could be no wrongful termination claim. Additionally, the court found that Lloyd failed to offer sufficient evidence of the requisite evil mind to support a claim for punitive damages. The court granted AMF's cross-motions for summary judgment on Lloyd's wrongful termination claim, his breach of good faith and fair dealing claim, and his punitive damages claim. This appeal followed.

## DISCUSSION

■■■ ¶ 9 In Arizona, employment contracts for an indefinite time period are presumed to be terminable at will. *Wagner v. City of Globe,* 150 Ariz. 82, 84, 722 P.2d 250, 252 (1986). The characteristic feature of employment at will is the ability of either party to terminate the employment relationship for good cause or no cause. *See Mack v. McDonnell Douglas Helicopter Co.,* 179 Ariz. 627, 629, 880 P.2d 1173, 1175 (App.1994).

¶ 10 Despite its recognition of at will employment, Arizona is among the states that have also recognized a cause of action for wrongful termination when an employer terminates an employee for a reason that violates a clearly mandated public policy. *See*

*Wagenseller v. Scottsdale Mem. Hosp.,* 147 Ariz. 370, 378, 710 P.2d 1025, 1033 (1985). Courts, however, hesitate to preclude an at will termination unless the public policy is substantial, fundamental, and expressed in constitution or statute. *See e.g., Frankel v. Warwick Hotel,* 881 F.Supp. 183, 186–87 (E.D.Pa.1995) (narrowly interpreting public policy exception, father could fire son for refusing to divorce wife of whom father disapproved despite general statutory policy of family preservation); *Sullivan v. Delta Air Lines,* 58 Cal.App.4th 938, 68 Cal.Rptr.2d 584 (1997) (statute requiring accommodation of employee's drug rehabilitation did not express a substantial and fundamental public policy to preclude termination for enrollment in rehabilitation program).

¶ 11 At the heart of the public policy exception to an employer's right to discharge at will is the concept that an employer should not be able to use the threat of discharge to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the commonwealth. *See Jacobs v. Universal Develop. Corp.,* 53 Cal. App.4th 692, 698–99, 62 Cal.Rptr.2d 446 (1997). In *Wagenseller,* our supreme court adopted the public policy exception to at will discharge, finding that an employer could not make continued employment hinge on whether the employee participated in a "mooning," a possible criminal offense. 147 Ariz. at 380, 710 P.2d at 1035.

¶ 12 In *Wagner,* the court extended this exception to include retaliatory firing for whistleblowing activity, because it found societal benefits in having employees expose employer activity that is illegal or that jeopardizes the health and safety of the public. 150 Ariz. at 89, 722 P.2d at 257. Thus, the court found that a police officer who was terminated because he questioned the unlawful detention of an arrestee had an action for wrongful termination. *Id.* at 90, 722 P.2d at 258. In both of these cases, the focus was on the act required by the employer, which either directed the employee to commit a wrongdoing (mooning) or required the employee to condone or perpetuate a wrongdoing by the employer (unlawful detention of prisoners) in order to keep his or her job.

¶ 13 In the instant case, the act the employer required of Lloyd was that he cover for the ailing mechanic. For the purpose of our review of the grant of summary judgment, we accept as true Lloyd's claims that (1) he was not scheduled to work on the Saturday; (2) Faiello called Lloyd to go in and replace him unexpectedly; (3) Lloyd was home with a young child and could not obtain a babysitter for him; (4) his employer knew that the reason he did not go in to work on Saturday was that he had no childcare. But even accepting these facts as true, we conclude that the resultant firing could not give rise to a cause of action for wrongful termination under the reasoning of *Wagenseller* and *Wagner* because the required act was to go to work, which was both lawful and permissible under the terms of Lloyd's employment.

¶ 14 We are not the first court to have considered this type of situation. In *Upton v. JWP Businessland,* 425 Mass. 756, 682 N.E.2d 1357 (1997), the employee, a single mother, was terminated because she could not work the long hours the employer required. She argued that meeting her employer's demand for long work hours violated public policy because it would require her to neglect her child. *Id.* at 1359. In support of her position, she cited Massachusetts' unemployment compensation cases and "the Commonwealth's broad policies of protecting the family unit and promoting the best interests of children" reflected therein. *Id.* But the *Upton* court upheld the termination, finding that no public policy mandated that an employer "adjust its expectations, based on a case-by-case analysis of an at-will employee's domestic circumstances, or face liability for having discharged the employee." *Id.* at 1360. The court reasoned that construing the public policy exception to include terminations of employees in Upton's situation would "tend to convert the general rule 'into a rule that requires just cause to terminate an at-will employee.'" *Id.* (citation omitted). The same reasoning is persuasive here.

¶ 15 No public policy prohibits employers from calling at will employees and expecting them to appear at work, and then terminating them if they do not. Lloyd would have us focus on the employee's reasons for not performing a lawful act in deciding this case. But that is neither required nor appropriate under *Wagenseller* and *Wagner*. So long as the act required by the employer is a lawful act, the employee's reasons for not performing the act, however reasonable, are immaterial. If this were not the case and if we were to focus on the employee's excuse for nonperformance, we would be imposing an element of "reasonableness" on an employer's decision to terminate that does not currently exist in Arizona, because an employee may be terminated "at the pleasure of either party, whether with or without cause." 147 Ariz. at 381, 710 P.2d at 1036. Such an expansion would erode the very essence of at will employment. It would insinuate the court between the employee and employer in every disputed termination and allow an employee's excuse to prevail over the employer's lawful job requirements.

¶ 16 In *Wagenseller* and *Wagner,* our supreme court identified a narrow public policy exception to the termination of at will employment. That exception requires that the employee be fired for either refusing to commit a wrongful act or for refusing to condone a wrongful act by the employer. Here, unexpectedly requiring an employee to come in to work does not constitute a wrongful act. Therefore, terminating an at will employee for failing to do so does not violate public policy.[5]

CONCLUSION

¶ 17 For the foregoing reasons, we affirm the summary judgment in favor of AMF.

CONCURRING: REBECCA WHITE BERCH, Judge.

KLEINSCHMIDT, Judge, Dissenting:

¶ 18 I respectfully dissent. In my opinion, the majority's conclusion that the employer

---

**5.** Lloyd does not argue on appeal that his claim for breach of the covenant of good faith and fair dealing can be sustained in the absence of a finding of a wrongful discharge. Nor can his claim for punitive damages continue. We, therefore, do not address those claims separately.

required nothing more than that the employee report for work, a lawful and permissible act under the terms of the employment, ignores the reality of the situation. The employer's directions to Lloyd necessarily required Lloyd to commit the unlawful act of neglecting his children. To fire him for refusing to do so would be against public policy.

¶ 19 I agree with the ruling of the Massachusetts court in *Upton v. JWP Businessland,* 425 Mass. 756, 682 N.E.2d 1357 (1997), that an employer need not tailor its job descriptions to the domestic circumstances of its employees. My view of Lloyd's right not to be fired under the assumed circumstances of this case is a very narrow one. I rely on the assumed fact that there was no clear understanding that Lloyd was on-call to stand in for other employees and that the request for him to come in to work, having never before been made in his five years of employment, was not something he should have anticipated. I do not suggest that an employer could not fire an on-call employee who does not have a contingent plan for child care, or could not fire an employee who does not make adequate provision for child care during normal working hours.

¶ 20 The record suggests that the need to care for his children might not have been Lloyd's real reason for refusing to come to work. I would reverse and remand for a trial on that issue.