[No. C044046. Third Dist. June 18, 2004.]

CHARLES F. SINATRA, Plaintiff and Appellant, v.
CHICO UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION<sup>*</sup>]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II of the Discussion.

[black redaction boxes]

## COUNSEL

Law Offices of Larry L. Baumbach and Larry L. Baumbach for Plaintiff and Appellant.

Halkides, Morgan & Kelley and John P. Kelley for Defendants and Respondents.

## OPINION

**RAYE, J.**—Plaintiff Charles F. Sinatra, a former assistant principal at Chico High School, appeals the summary adjudication and judgment on the pleadings granted defendants Chico Unified School District et al. (the District)[1] on his causes of action for discrimination under the California Fair Employment and Housing Act (the FEHA; Gov. Code, § 12900 et seq.) and for wrongful discharge in violation of public policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330] (*Tameny*)). Despite

---

[1] The individual defendants are Jim Sands, named individually and as Assistant Superintendent of Personnel of the Chico Unified School District, and Scott Brown, named individually and as Superintendent of the Chico Unified School District.

the letter he received in July 2001 transferring him to a full-time teaching position, plaintiff asserts the FEHA claim he filed in August 2002 was timely, notwithstanding the one-year limitation period applicable to FEHA claims, because he believed his request for a part-time administrative position might be granted up until the academic year began in September. He also contends that a program allowing educators who might otherwise retire to work part time constitutes a fundamental and substantial public policy of this state. (Ed. Code, § 44922.)[2] He insists a jury ought to decide whether the District is liable in tort for failing to provide him a part-time administrative position. In the unpublished portion of this opinion, we conclude that plaintiff's FEHA claim is not timely, and in the published portion of this opinion, we hold that his tort claim is not tethered to the kind of fundamental and substantial public policy required by *Tameny* and its progeny. We therefore affirm.

## FACTS

Plaintiff was a full-time employee of the District for over 28 years, serving the last 11 years of his tenure as an assistant principal. Throughout this time period, plaintiff suffered from clinical depression. In January 2001 plaintiff requested a reduction to a part-time administrative position pursuant to District policies enacted under Education Code section 44922. On January 29, 2001, the assistant superintendent notified plaintiff in writing that the school board would meet on February 7 to consider reassigning him to a classroom teaching position. Plaintiff did not attend the board meeting. On that date, the board decided to reassign plaintiff from his assignment as assistant principal to a full-time teaching position. The following day, he received a "Notice of Release from Administrative or Supervisory Position and Reassignment Pursuant to Education Code Section 44951." Because such notices allowed administrative flexibility, plaintiff was not concerned. He had previously received similar notices reassigning him to the classroom and yet had been returned to his administrative duties the following school year.

On July 19, 2001, the District's deputy superintendent wrote plaintiff: "I'm sorry the offer of .4 assistant principal and .2 teaching position at Bidwell Junior High School will not work for you. [¶] As I stated, that was all we have to offer in the way of an administrative placement. Your assignment will be as a full time teacher for the 2001–02 school year at Chico High School."

In his declaration in opposition to the District's motion for summary judgment, plaintiff stated: "The ordinary practice of the school district was to make teaching assignments ideally in June at the beginning of summer break. However, any assignment that occurred in June would not be finalized until

---

[2] All further statutory references are to the Education Code unless otherwise indicated.

the middle or end of August, after final enrollment was completed. Once final enrollment was completed then we were able to learn which classes were going to require a teacher and be sufficiently filled and which classes although assigned a teacher, did not have enough students and had to be cancelled. Sometimes this process would go on into September as the class loads and assignments became more clear. When I realized in the middle of August of 2001, that I was not going to be reassigned to a part-time administration position I realized that the District was determined to terminate me."

Rather than teach full time, plaintiff took a medical leave of absence. Plaintiff filed a complaint form with the Department of Fair Employment and Housing on August 1, 2002. He thereafter commenced the present litigation. As relevant to his appeal, plaintiff's second amended complaint set forth causes of action for violation of the FEHA for termination in violation of public policy. The trial court granted the District's motion for summary adjudication of the FEHA cause of action, finding that the complaint had not been timely. At trial, the court granted the District's request for judgment on the pleadings because section 44922 does not set forth the type of fundamental and substantial public policy sufficient to state a *Tameny* claim.

## DISCUSSION

### I, II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

█ Plaintiff's cause of action for wrongful termination in violation of public policy is a well-established exception to the at-will employment doctrine. (*Tameny, supra,* 27 Cal.3d 167; *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 665–671 [254 Cal.Rptr. 211, 765 P.2d 373]; *Rojo v. Kliger* (1990) 52 Cal.3d 65, 88–91 [276 Cal.Rptr. 130, 801 P.2d 373].) While an employer may discharge an employee for any reason, or for no reason at all, an employer may not do so when the discharge violates "fundamental public policy." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 887 [66 Cal.Rptr.2d 888, 941 P.2d 1157].) Thus, a termination that violates a fundamental principle of public policy is tortious. (*Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814, 820 [118 Cal.Rptr.2d 807] (*Jersey*).)

"Yet despite its broad acceptance, the principle underlying the public policy exception is more easily stated than applied. The difficulty, of course, lies in determining where and how to draw the line between claims that

---

[*]See footnote, *ante,* page 701.

genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee. This determination depends in large part on whether the public policy alleged is sufficiently clear to provide the basis for such a potent remedy." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090 [4 Cal.Rptr.2d 874, 824 P.2d 680].) Moreover, " 'public policy' as a concept is notoriously resistant to precise definition." (*Id.* at p. 1095.)

■ To withstand a legal challenge to a wrongful discharge claim, a plaintiff must identify a policy that is "fundamental" and "substantial" in that it is tethered to constitutional or statutory law, that inures to the benefit of the public rather than to a personal or proprietary interest of the individual employee, and that is clearly articulated at the time of discharge. (*Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1104 [119 Cal.Rptr.2d 698, 45 P.3d 1162].) The cases in which the courts have allowed a tortious claim for wrongful termination in violation of public policy generally fall into one of four categories, where the employee is discharged for: (1) refusal to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory or constitutional right or privilege; or (4) reporting an alleged violation of a statute of public significance. (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 454 [57 Cal.Rptr.2d 46].)

Utilizing the third category, plaintiff argues he was constructively terminated for exercising his statutory right to work part time. He contends that section 44922 embodies the requisite fundamental public policy. Section 44922 provides, in part: "Notwithstanding any other provision, the governing board of a school district or a county superintendent of schools may establish regulations which allow their certificated employees to reduce their workload from full-time to part-time duties." The statute further provides that if a school district opts to provide a part-time option, the regulations adopted pursuant to the statute must contain specified qualifications and terms and conditions not pertinent here. (§ 44922, subds. (a)–(i).) Thus, plaintiff attempts to ground his tort claim on the District's statutory right to allow older full-time employees a part-time option without sacrificing their retirement and health care benefits.

"[I]n determining whether discharging an employee for exercising a right violates a fundamental public policy, the focus is not simply on the importance of the right that was exercised. The issue is whether permitting an employer to discharge an employee for exercising that right would undermine a ' "clearly mandated public policy" ' embodied in the provision from which that right emanates. [Citation.] It must be clear from the provision itself or from some other legislative or regulatory enactment that employers are not free to disregard or limit that right. . . . '[A] constitutional or statutory

provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law.' [Citation.]" (*Jersey, supra,* 97 Cal.App.4th at pp. 821–822.)

Although plaintiff suggests that section 44922 embodies fundamental public policy, he fails to suggest what that public policy is. If plaintiff assumes that all statutes encompass a sufficient policy to support a *Tameny* tort claim, he is mistaken. Although plaintiff suggests that section 44922 embodies fundamental public policy, he fails to suggest what that public policy is. If plaintiff assumes that all statutes encompass a sufficient policy to support a *Tameny* tort claim, he is mistaken. Surely the Legislature believes that each statute enacted serves the public interest of this state, but the courts have clearly and consistently demanded that public policy within the meaning of a *Tameny* tort claim must be fundamental and substantial and must inure to the benefit of the public at large. *Sullivan v. Delta Air Lines, Inc.* (1997) 58 Cal.App.4th 938 [68 Cal.Rptr.2d 584] (*Sullivan*) provides guidance on the meaning of fundamental public policy in the context of a plaintiff's claim arising from the exercise of his or her rights.

In *Sullivan*, a Delta Air Lines employee sought tort damages for wrongful termination in violation of the public policy expressed by the Alcohol and Drug Rehabilitation Act. (Lab. Code, § 1025 et seq.) The court held that the policy underlying Labor Code section 1025 does not support a common law tortious discharge claim. "In our view the policy of requiring reasonable accommodation of an employee's alcohol or drug rehabilitation efforts does not resemble other public policies which have been found to support a cause of action for tortious discharge. . . . An employee's voluntary participation in an alcohol or drug rehabilitation program does not reflect an immutable characteristic like race, gender or age. [Citation.] Rehabilitation involves an employee's positive choice to overcome an addiction, whereas the Supreme Court has emphasized that race, gender and age deserve special protection precisely because they are not the products of free choice." (*Sullivan, supra,* 58 Cal.App.4th at p. 946.) The court also found that the policy served by section 1025 is not buttressed by other consistent constitutional or statutory provisions; in fact, it appears to be unique "in providing qualified job protection when an employee chooses to participate in an alcohol or drug rehabilitation program." (*Sullivan, supra,* 58 Cal.App.4th at p. 946.) The court concluded that the discharge of an employee undergoing rehabilitation did not give rise to a tortious discharge claim because section 1025 was not comparable to rights rooted in a deeply imbedded and consistent public policy. (*Sullivan, supra,* 58 Cal.App.4th at p. 946.)

In this case, plaintiff, like the employee in *Sullivan,* elected to participate in a voluntary program established for his personal benefit. Like Sullivan, he hoped to avail himself of a privilege blessed by statute; in plaintiff's case, he hoped to work part time. But Education Code section 44922, like Labor Code

section 1025, does not resemble other public policies that have been found to support a tort claim. Plaintiff's "right" to part-time employment, like Sullivan's "right" to drug and alcohol treatment without jeopardizing his job security, stands in stark contrast to a case such as *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361 [122 Cal.Rptr.2d 204] (*Grant-Burton*), in which the court found that the plaintiff's right to discuss her wages in the workplace was fundamental and substantial.

In *Grant-Burton*, the right to discuss wages with coworkers was fundamental and substantial under both state and federal law. Labor Code section 923 states: "[T]he *public policy* of this State is declared as follows: [¶] Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. . . . [I]t is necessary that the individual workman have full freedom of association . . . to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in . . . concerted activities for the purpose of . . . mutual aid or protection." (See *Grant-Burton, supra*, 99 Cal.App.4th at p. 1374.) Labor Code section 232 prohibits an employer from disciplining or otherwise discriminating against an employee who discloses the amount of his or her wages. Moreover, participating in a group discussion about the fairness of compensation is protected under the National Labor Relations Act (29 U.S.C. §§ 151–169). (*Grant-Burton, supra*, 99 Cal.App.4th at p. 1374.)

As a consequence, there is a comprehensive and uniform state and federal policy protecting a worker's right to discuss wages with coworkers. An employer, by the express terms of Labor Code section 232, is prohibited from discharging a worker for exercising his or her right to discuss wages. Grant-Burton's termination therefore contravened a fundamental public policy giving rise to a tort claim.

■ Plaintiff's claim, by contrast, lacks the essential attributes necessary *to state a claim for wrongful termination in violation of a fundamental public policy*. Section 44922 grants the District the discretion to implement a part-time program for senior employees. While it enables school districts, therefore, to bestow a valuable right on a select segment of their employees, section 44922 does not embody the kind of universal and important right recognized as fundamental to the public good. As the District points out, school districts are not obligated to provide the part-time program. Nor is there a direct benefit to the public at large. While individual teachers and administrators are able to reap the benefits of the part-time option, the benefit to the public is indirect and tangential. Hence, we conclude the trial court properly granted the District's motion for judgment on the pleadings because its inability to offer plaintiff a part-time administrative position as allowed by section 44922 does not constitute a violation of a fundamental policy of this state.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 1, 2004.