**Howard Paul GREENWALT, Plaintiff,**

v.

**SUN WEST FIRE DISTRICT,
an Arizona Fire District,
et al., Defendants.**

**No. 98–1408–PHX–ROS.**

United States District Court,
D. Arizona.

Feb. 10, 2000.

Kraig Marton, Phoenix, AZ, for Howard Greenwalt, plaintiff.

Tara Jackson, Christina Bannon, Bonnett Fairbourn Friedman & Balint, Phoe-

nix, AZ, for Sun City West Fire District, defendants.

Flora Schule, Phoenix, AZ, for Donald D. Johnston, Jr., defendants.

## ORDER

SILVER, District Judge.

On May 29, 1998, Plaintiff Howard Paul Greenwalt ("Plaintiff") brought this action against his former employer, Sun City West Fire District (the "Fire District" or "Defendant") and Donald F. Johnston, in the Maricopa Superior Court, alleging violation of due process, (Count One) (Compl.¶¶ 25–31); violation of 42 U.S.C. § 1983, (Count Two) (Compl.¶¶ 32–39); public policy wrongful discharge, (Count Three) (Compl.¶¶ 40–45); and breach of contract, (Count Four) (Compl.¶¶ 46–50). Plaintiff sought general and special damages, attorney fees and reinstatement to his prior position with full back-pay and benefits as well as punitive damages against Defendant Johnston. On July 31, 1998, Defendants removed the case to the district court and on August 3, 1998, Defendants filed their separate Answers.

On May 21, 1999, Defendant filed a Motion for Summary Judgment and a Statement of Facts in support of its Motion, pursuant to the Fed.R.Civ.P. 56, requesting summary judgment on all Plaintiff's claims against the Fire District. On July 8, 1999, Plaintiff filed a Response to Defendant's Motion, a Response to Defendant's Statement of Facts and Additional Facts in Opposition to Defendant's Motion for Summary Judgment. On July 16, 1999 Plaintiff filed a Supplementation of Record. On July 30, 1999 Defendant filed a pleading styled "Reply and Objection to Plaintiff's Additional Facts."

On August 12, 1999, by stipulation of the parties the Court dismissed all claims against Defendant Johnston with prejudice.

On January 6, 2000, in light of the Arizona Supreme Court upholding the constitutionality of the Employment Protection Act (the "EPA") [1] in *Cronin v. Sheldon*, 195 Ariz. 531, 991 P.2d 231 (1999), and the parties' stipulation, the Court dismissed Plaintiff's claim for wrongful termination.[2]

In addition to Defendant's Motion for Summary Judgment, also pending before the Court is a fully briefed Defendant's Motion to Strike Expert Testimony of Kathy Gromoll.

## FACTS

The following facts alleged by the parties are undisputed. The Fire District was created in 1981 to provide fire protection and emergency medical services to the Sun City West area and, for many years, it contracted with Rural Metro for personnel needed in Defendant's operations. (Def.'s SOF ¶ 1.) Plaintiff was employed by Rural Metro as a firefighter and worked for Defendant through Rural Metro. *Id.* In 1993 Defendant decided to terminate its arrangement with Rural Metro and hire the firefighters directly. (Def.'s SOF ¶ 2.) On April 5, 1993, Defendant issued a written offer to Plaintiff, which read:

> At this time, we the Board of the Fire District Sun City West would like to extend an opportunity to you, to stay on as an employee of the Fire District of Sun City West on July 1st when the District goes on their own.
>
> We need to have your answer by April 15 as to whether you will be staying on with us or staying with Rural/Metro. We would be happy to have you in our family, but will abide by whatever decision you make.

(Def.'s SOF ¶ 2; Exh. 5.) Plaintiff responded with a letter accepting the offer. (Def.'s SOF ¶ 3.) Defendant's plans of terminating the Rural Metro contract and hiring the firefighters directly were then

---

1. A.R.S. § 23–1501 *et seq.*

2. Plaintiff conceded that if the EPA's constitutionality was upheld his wrongful termination claim must fail. (Pl.'s Resp. at 8.)

postponed until the next year and, on January 14, 1994, Defendant sent Plaintiff another letter, virtually identical to the April 5, 1993 letter, except for the dates, inviting Plaintiff to join Defendant, as an employee, as of July 1, 1994. (Def.'s SOF ¶ 4; Exh. 6.) Plaintiff accepted. (Def.'s SOF ¶ 5: Exh. 6.) Sometime after Plaintiff began working for Defendant, Defendant adopted Statements of Policy (the "Policy"). (Def.'s SOF ¶ 7.) The Policy, in a chapter devoted to Disciplinary Procedures, contains one reference to "at will" employment.

> Discharge is a terminal action by which the employee is removed from the payroll. Employment with the Fire District is "at will" and discharge may occur "for cause" or for "no cause." Discharge for cause is the ultimate disciplinary action, and terminates the employment relationship.

(Def.'s SOF ¶ 7.) The Policy was not distributed to Defendant's employees but it was made available for review at any time. The Policy was copied from Rural Metro's Employee handbook, (Pl.'s SOF ¶ 10) but omitted four out of five "at will" disclaimers contained in the first chapters of Rural Metro. (Pl.'s SOF ¶ 11.) Also, at Rural Metro a newly hired employee was required to sign a statement acknowledging at-will employment. No such statement was required to be signed upon commencement of employment with Defendant. (Def.'s SOF ¶ 13.) Additionally, at Rural Metro employees were required to sign a receipt for the employee handbook which again stated they were at-will employees. No receipt was required when Defendant issued the Policy. (Pl.'s SOF ¶ 14.) Plaintiff did not receive a copy of the Policy and did not see it until after his employment with Defendant was terminated on May 30, 1997. (Def.'s SOF ¶¶ 8–9; Exh. A.)

## THE PARTIES' ARGUMENTS

Although Defendant requests summary judgment on all Plaintiff's claims, the parties' arguments focus greatly on one issue: whether Plaintiff was an "at-will" employee. The resolution of this issue is crucial for the purpose of adjudicating Defendant's Motion for Summary Judgment on all the remaining claims.

Plaintiff alleges that his employment was based on a contract implied-in-fact. In support of this allegation Plaintiff quotes the language of the letters issued him by Defendant in 1993 and 1994, "[w]e would be happy to have you in our family," and similar language allegedly used by Defendant's management upon commencement of Plaintiff's employment with Defendant, while Defendant was welcoming the new employees "to the family." (Pl.'s SOF ¶ 6.) Plaintiff further alleges that one of his supervisors stated that Defendant can fire its employees only for cause and that this was the general belief and understanding among the employees.[3] (Pl.'s SOF ¶ 5.)

Defendant, on the other hand, insists that Plaintiff's employment was "at-will," that the Policy adopted by Defendant expressly stated so in section 14.02, and, even if the Policy's disclaimer is not conspicuous, Plaintiff may not rely on the Policy because he admitted never seeing it until after he was terminated. Defendant also argues that, under the EPA, an employee must establish the existence of an employment contract to bring a claim for breach of contract, A.R.S. § 23–1501, and that Plaintiff has failed to meet this requirement. (Def.'s Mot. At 5.)

In Response, Plaintiff argues that, assuming the EPA is found constitutional, it either does not apply, because the contractual relationship between Plaintiff and Defendant started prior to the enactment of the EPA, or, if it applies, the contractual agreement between Plaintiff and Defen-

---

**3.** During his deposition Plaintiff stated only that, in May 1997, Captain Leveto, to whom Plaintiff referred, allegedly told Plaintiff "they can't fire you." (Pl.'s Depo. at 29:12 – 30:9)

Captain Leveto denied making such statement. (Def.'s Obj. to Pl.'s SOF at 2, Exh. C, Affid. Of Carl Leveto.)

dant meets the requirements of the EPA. (Pl.'s Resp. 5–8.) Plaintiff further alleges that, because he was not an at-will employee, he had a property interest in continued employment and, therefore, was entitled to a notice and a hearing, i.e., to due process. (Compl. ¶¶ 26–30.)

## LEGAL DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment may be granted if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Therefore, three factors must be considered in deciding a motion for summary judgment: (1) whether there is any dispute between the parties, (2) whether such dispute relates to the facts of the case, and (3) whether this factual dispute is material to the disposition of the case. The initial burden of identifying the elements of the claim in the pleadings, depositions, answers to interrogatories, affidavits, and other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact," is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If at trial the non-moving party will bear the burden of proof as to any essential element of its case, that party can withstand a motion for summary judgment only by showing that a genuine issue of fact pertaining to such material element exists and that the dispute may be resolved only by the fact finder, because it could reasonably be resolved in favor of either party. *Celotex,* 477 U.S. at 321, 106 S.Ct. 2548. Courts must view the evidence in the light most favorable to the non-

moving party and draw any reasonable inferences in the non-moving party's favor. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). Bare conclusory allegations unsupported by factual data, however, are insufficient to defeat a summary judgment motion. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

### B. Plaintiff's Claim for Breach of Contract

Because Defendant hired Plaintiff in 1994, i.e., prior to the enactment of the EPA, the initial agreement between the parties is not governed by the statute. A.R.S. § 1–244 ("[n]o statute is retroactive unless expressly declared therein"); *and see* Arizona Constitution Art. 2 § 25 ("[n]o bill of attainder, ex-post-facto law, or law impairing the obligation of a contract, shall ever be enacted"); *cf. Samaritan Health System v. Superior Court of State of Ariz.,* 194 Ariz. 284, 981 P.2d 584 (Ct.App.1998) (holding that contract impairment clause of the Arizona Constitution limits the legislature's ability to impair obligations under existing contracts).

The Court, therefore, will apply the Arizona common law, existing before the enactment of the EPA, which provides that employment contracts for an indefinite time period are presumed to be terminable at will. *Wagner v. City of Globe,* 150 Ariz. 82, 722 P.2d 250, 252 (1986) (en banc). The characteristic feature of employment at-will is the ability of either party to terminate the employment relationship for good cause or no cause. *Mack v. McDonnell Douglas Helicopter Co.,* 179 Ariz. 627, 880 P.2d 1173, 1175 (Ct.App. 1994). The presumption of at-will employment may be overcome if an employee can establish the existence of a contract term, which is either express or implied from the language used by the parties or by their behavior. *See Demasse v. ITT Corporation,* 194 Ariz. 500, 984 P.2d 1138 (1999) (en banc). If an employee succeeds in establishing such language or conduct con-

stituting the additional, for-cause term, the employment relationship is deemed to be governed by such term. *Id.* at 1142 (citations omitted).

> An example of such term is one that offers the employee job security—one specifying the duration of employment or limiting the reasons for dismissal.... A statement is contractual only if it discloses a promissory intent or one that the employee could *reasonably conclude constituted a commitment by the employer.* If the statement is only a description of the employer's present policies ... it is neither a promise nor a statement that could reasonably be relied upon as a commitment. An implied-in-fact contract term is formed when a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship at-will had been limited.

*Id.* at 1143 (emphasis added) (internal quotation marks and citations omitted). Plaintiff's alleged expectation, at the time of his hiring, that his employment may never be terminated other than for cause (Pl.'s Depo. at 20), is not supported by the facts presented by the parties.[4] Plaintiff alleges he believed that public employees could only be terminated for good cause. (Pl.'s Resp. at 3.) Plaintiff's subjective belief does not create an issue of material fact. Plaintiff's novel proposition that a public employee can be terminated only for cause, is not supported by law and he cited none. Next, Plaintiff states he believed

and was allegedly led to believe, though it is not clear by whom, that by being a member of a union he was entitled to job security.[5] (Pl.'s Resp. at 3.) However, no contracts were entered with Defendant through the union. (Pl.'s Depo. at 37.) Again, Plaintiff's subjective belief does not create a factual dispute, particularly because Plaintiff does not allege that Defendant led him to such belief.

Plaintiff next argues that: "there came to the existence an implied-in-fact employment agreement" between Plaintiff and Defendant, the terms of which "included that [Plaintiff] could only be terminated for cause, i.e, for a 'gross infraction of rules/regulations.'" (Pl.'s Resp. at 6.)[6] Plaintiff maintains that the Policy, in Chapter 4, "provides an affirmative statement that there be good cause to terminate any employee," that "it provides specific reasons for termination," and it does not include any at-will disclaimer. *Id.* (PSOF ¶ 8.) Although it is true that there is no disclaimer in Chapter 4,[7] the remainder of the argument is not supported by the language of the Policy. The beginning paragraphs of Chapter 4 read:

> The Fire District of Sun City West *desires* to provide long-term employment to all present and future employees. To that end the District has adopted numerous policies to enhance an employee[']s opportunities for advancement within the department as well as provide for an equitable handling of grievances. However, there may be times when the employee/employer relationship will end

---

4. Plaintiff's statement in his deposition that many of Defendant's employees were in constant fear of being terminated by Chief Johnston, at any time, (Pl.'s Depo. at 29–56), directly contradicts his assertion that he expected to be terminated only for cause. In addition, the written offer extended by Defendant invited Plaintiff to "stay on as an employee of the Fire District of Sun City West[,] when the District goes on their own," thus indicating the continuation of the previous *status quo* under the new management rather than any express changes in that *status quo.*

5. Within one year of when Defendant directly hired all employees, the employees unionized. (Pl.'s SOF ¶ 3.)

6. It is unclear how Plaintiff arrived at this conclusion, because, in his Response, Plaintiff does not cite any fact or case law supporting it.

7. There is a disclaimer in Chapter 14, however, which provides, at § 14.02(4), that "[e]mployment with the Fire District is 'at will' and discharge may occur 'for cause' or 'for no cause.'" (DSOF, Exh. 4.)

and *this policy addresses the two most common types of termination, voluntary and involuntary.*

(Def.'s SOF Exh. 4; the Policy, § 4.1) (emphasis added). The subsection on Involuntary Termination, § 4.03, describes the "two classes" of the involuntary termination: a dismissal for gross infraction of rules or dismissal due to a reduction in force. There is no affirmative statement by the employer that these are the *only* types of termination. To the contrary, § 4.1 specifies that the Policy "addresses the two most common types of termination, voluntary and involuntary," clearly indicating that there are other possible types which are not addressed.

Further, the first two paragraphs of section 14, addressing the disciplinary procedures, provide that the procedures are not mandatory but can be invoked by management at its sole discretion. It is unambiguously stated that the procedures constitute "an outline and guide" and "[t]his process does not constitute a contract and does not require that any one step of disciplinary action be taken before any other step." (Def.'s SOF, Exh. 4.) Finally, the first sentence states: "[t]he Fire district will attempt to use progressive discipline when appropriate, but management retains discretion to determine when such progressive discipline is appropriate and what sate [sic] discipline shall be implemented."

■ Plaintiff also argues that certain oral statements by Defendant create an implied-in-fact contract. Again, the argument is not supported by facts or law. The alleged statement welcoming the new employees into the "family" does not evidence a promise that Plaintiff could not be terminated other than for cause, nor "could reasonably be relied upon as a commitment" to change the at-will employment relationship. *Demasse*, 984 P.2d at 1143. In Arizona, "oral statements of job security must be clear and unequivocal to overcome the presumption of employment at will." *Duncan v. St. Joseph's Hosp.*

*and Med. Ctr.*, 183 Ariz. 349, 903 P.2d 1107, 1115 (Ct.App.1995). Thus, statements welcoming Plaintiff to the "family" are not more than "aspirational expressions of [an] optimistic hope of a relationship of some duration[,] of a kind which typically accompanies communications with employees." *Duncan*, 903 P.2d at 1115.

■ Plaintiff also alleged that his captain, Carl Leveto, told him that he could not be fired. (Pl.'s Depo. at 29.)

A. I was told they can't fire me.

Q. Who told you that?

A. My captain.

Q. Which captain?

A. Carl Leveto.

Q. When did Mr. Leveto tell you that?

A. After I had the accident with the ladder truck.

Q. By "accident with the ladder truck" you mean the accident that occurred in—was it 1997?

A. Yes. May of '97.

(Pl.'s Depo. at 29–30.) Mr. Leveto denies making such statement. (Def.'s Obj. to Pl.'s SOF at 2, Exh. C, Affid. Of Carl Leveto.) But assuming, for the purposes of deciding this Motion only, that the conversation took place as alleged, Mr. Leveto's statement does not defeat Defendant's Motion for summary judgment, because, taking all reasonable inferences in favor of Plaintiff, it could not be reasonably relied upon as a commitment to change the at-will employment relationship. *Demasse*, 984 P.2d at 1143. The statement was allegedly made in May of 1997, many years *after* Defendant hired Plaintiff, and therefore, it could not be reasonably perceived by Plaintiff as a promise or commitment at the time he started working for Defendant. Further, it did not amount to a commitment or promise to change the existing at-will employment, because it did not clearly and unequivocally express Defendant's promise of creating job security. *Duncan*, 903 P.2d at 1115.

Plaintiff argues that the existence of an implied-in-fact contract "is a fact issue for the jury to determine" and, therefore summary judgment is improper. (Pl.'s Resp. at 6.) Plaintiff relies on *Loffa v. Intel Corp.*, 153 Ariz. 539, 738 P.2d 1146, 1150 (Ct.App.1987) and *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1033 (1985) for support, but Plaintiff's reliance is misplaced. In *Loffa*, upon commencement of employment, plaintiff signed an "Employee Agreement" expressly stating that employment was "at-will." *Id.* at 1150. During the orientation for new employees, the employer discussed a handbook titled "Non Exempt Discipline Policy" establishing a progressive disciplinary process. *Id.* at 1148. There was also another document issued by the employer, "Our Procedures/Your Responsibility." *Id.* The documents were not consistent and the evidence demonstrated that the employer encouraged employees to rely on the disciplinary procedures. *Id.* at 1151. Thus, in *Loffa*, there were numerous documents as well as demonstrated practices, customs and procedures, which the court found created a factual issue in dispute, because the "language of the policy and the conduct of [defendant] in adopting the policy and explaining it to its employees could properly be viewed by the jury as indicating that the policy was intended to be part of employment agreement." *Id.* In contrast, in the case at bar, there are no conflicting or ambiguous documents or employer's conduct to consider and, therefore, there is no question for a jury to decide.

Also *Wagenseller* does not support Plaintiff's assertion that the existence of an implied-in-fact contract must always be determined by a jury. *Wagenseller* involved a factual dispute as to whether provisions of a four step disciplinary procedure established by the defendant had become a part of the employment contract, and whether the document implementing the procedure had sufficient clarity to conclude that it did not create new terms of employment. The court stated:

The right of discharge without cause is an implied contractual term which is said to exist in an at-will relationship when there are no factual indications to the contrary. The intent to create a different relationship, as well as the parameters of that relationship, are to be discerned from the totality of the parties' statements and actions regarding the employment relationship. The general rule is that the determination whether in a particular case a promise should be implied in fact is a question of fact. *Where reasonable minds may draw different conclusions or inferences from undisputed evidentiary facts, a question of fact is presented.* The very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

710 P.2d at 1038 (emphasis added) (citations and internal quotation marks omitted). Thus, to require a determination by a jury, there must be "conflicting inferences and conclusions," which "reasonable minds may draw" from the "undisputed evidentiary facts." *Id.* Unlike the plaintiff in *Wagenseller*, Plaintiff in the case at bar did not present any "undisputed evidentiary facts" which would allow reasonable minds to draw conflicting conclusions as to the terms of his employment with Defendant at the time Plaintiff was hired, nor as to the modification of the terms of his employment after the Policy was issued. Consequently, "[t]he court may determine as a matter of law the proper construction of contract terms which are clear and unambiguous." *Id.* at 1037.

The Court finds that at the time Plaintiff commenced employment with Defendant he became an at-will employee of Defendant, and that the at-will contract did not change into a for-cause contract at any time during Plaintiff's employment with Defendant and particularly after the Policy was issued. Defendant's Motion for Sum-

mary Judgment on Plaintiff's claim for breach of contract will be granted.

### C. Plaintiff's Claim for Violation of Due Process

In order to state a claim for a violation of procedural due process, Plaintiff must first establish that he has a protected property right. *Hillis v. Stephen F. Austin State Univ.,* 665 F.2d 547, 552 (5th Cir.), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). In his Response, Plaintiff admits that to have a property interest in his employment he must be a "not at will employee." (Pl.'s Resp. at 9.) Because the Court has determined that Plaintiff's employment was at-will, Plaintiff did not have a constitutionally protected property interest in continued employment. Consequently, Defendant is entitled to summary judgment on Plaintiff's due process claim as a matter of law.

### D. Plaintiff's Claim for Violation of 42 U.S.C. § 1983

Plaintiff also alleges that he was terminated in violation of the 42 U.S.C. § 1983 ("Section 1983"). While Defendant's Motion for Summary Judgment requested that the Court grant summary judgment in favor of Defendant on all claims set forth in Plaintiff's Complaint, no facts or arguments were presented in support of summary judgment on the Section 1983 claim. However, it appears from the language of the Complaint that the claim rests on the same allegations as the breach of contract and depravation of due process claims, (Compl.¶¶ 32–39), which the Court found to be without legal basis. Hence, Defendant is entitled to judgment as a matter of law on this count as well.

### E. Defendant's Motion to Strike Expert Testimony

Ms. Gromoll's testimony is offered by Plaintiff in support of the allegation that "at will" clause is not conspicuous enough in the Policy. Because the Court will grant Defendant's Motion for Summary Judgment on all claims, the Court need not decide Defendant's Motion to Strike Expert Testimony of Ms. Gromoll and will deny it as moot.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 49) is granted as to all claims.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Expert Testimony is denied as moot.