**Joseph LAMKE, Plaintiff,**

v.

**SUNSTATE EQUIPMENT CO., LLC, Defendant.**

No. C–03–4956 EMC.

United States District Court, N.D. California.

Sept. 22, 2004.

Lisa R. Roberts, McNamara Dodge Ney Beatty Slattery, Walnut Creek, CA, for Plaintiff.

D. Gregory Valenza, Shane K. Anderies, Jackson Lewis LLP, San Francisco, CA, Jay A. Zweig, Gallagher & Kennedy, P.A., Phoenix, AZ, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND STRIKE

(Docket No. 33)

CHEN, United States Magistrate Judge.

Having considered the parties' briefs and accompanying submissions, and good cause appearing therefor, the Court hereby GRANTS Defendant Sunstate Equipment Co., LLC's motion to dismiss and strike.

### I. FACTUAL & PROCEDURAL BACKGROUND

In his first amended complaint ("FAC"), Plaintiff Joseph Lamke has asserted claims for (1) breach of implied contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud and deceit; and (4) wrongful termination in violation of public policy. Sunstate has moved to dismiss and strike the FAC. All of the causes of action are challenged in the motion to dismiss and strike except for that of breach of implied contract.

The following facts are alleged in Mr. Lamke's FAC: Mr. Lamke was employed by Sunstate as a sales manager for almost five years. *See* FAC ¶ 1. He had a history of positive reviews and promotions with Sunstate. *See id.* ¶ 5. In spite of such, on or about August 22, 2002, Mr. Lamke was terminated based upon allegations of drug use about which Sunstate did not properly inform him (*e.g.*, failing to identify the individual who made the allegations), which were not substantiated, which Sunstate failed to investigate properly, and which he was not allowed to contest. *See id.* ¶ 4. Sunstate's actions were contrary to its policies and procedures as expressed in its employee handbook as well as its oral representations. *See id.* ¶¶ 3, 6.

The Court notes that, in his opposition to Sunstate's motion to dismiss and strike, Mr. Lamke makes allegations beyond those stated in his FAC. In ruling on this motion, the Court shall consider only those allegations as stated in the FAC. However, allegations in the opposition inform the Court's decision as to whether dismissal should be granted with leave to amend.

## II. *DISCUSSION*

### A. *Legal Standard*

#### 1. *Motion to Dismiss*

■ Pursuant to Rule 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). For such a motion, the court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Janas v. McCracken (In re Silicon Graphics Sec. Litig.),* 183 F.3d 970, 983 (9th Cir.1999). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

#### 2. *Motion to Strike*

■ Under Rule 12(f), a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). "[C]ourts will strike a claim as 'redundant' when it essentially repeats another claim in the same complaint." 2–12 Moore's Fed. Practice § 12.37[3]; *see also Munie v. Stag Brewery,* 131 F.R.D. 559, 560 (N.D.Ill.1989) (because two counts alleged premises liability and personal injury damages against defendant, ordering the second count stricken on grounds of redundancy); *Davidson v. John Deere & Co.,* 644 F.Supp. 707, 712–13 (N.D.Ind.1986) (consistent with recent state court decision, striking claim for breach of implied warranty under UCC as duplicative of strict liability/products liability claim).

### B. *Breach of Covenant of Good Faith and Fair Dealing*

Sunstate argues that Mr. Lamke's claim for breach of the covenant of good faith and fair dealing should be dismissed and/or stricken because it is duplicative of his claim for breach of implied contract. In support of this argument, Sunstate cites *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000).

In *Guz,* plaintiff asserted claims for, *inter alia,* breach of implied contract to be terminated only for good cause and breach of the covenant of good faith and fair dealing. *See id.* at 326, 100 Cal.Rptr.2d 352, 8 P.3d 1089. Plaintiff argued that, "even if his employment included no ... implied-in-fact agreement limiting [defendant's] right to discharge him, and was thus 'at will,' the covenant of good faith and fair dealing, implied by law in every contract, precluded Bechtel from terminating him arbitrarily, as by failing to follow its own policies, or in bad faith." *Id.* at 326–27, 100 Cal.Rptr.2d 352, 8 P.3d 1089. The court disagreed. It emphasized that the covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349–50, 100 Cal. Rptr.2d 352, 8 P.3d 1089. To the extent an implied covenant cause of action seeks to impose limits beyond those to which the parties actually agreed, the claim is invalid. To the extent the claim seeks simply to invoke terms to which the parties did not agree, it is superfluous. *Id.* at 352, 100 Cal.Rptr.2d 352, 8 P.3d 1089. The central teaching of *Guz* is that in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract.

■ In the instant case, there are allegations about, *e.g.,* failure on the part of Sunstate to investigate the grievance or give Mr. Lamke an opportunity to respond to the grievance, but Mr. Lamke's claim for breach of the covenant of good faith and fair dealing is essentially based on his

termination "without good or sufficient cause." FAC ¶ 19; *see also id.* ¶ 20 (claiming breach of covenant by defendant by "terminating plaintiff's employment without cause and for reasons having nothing to do with legitimate business justifications"). As *Guz* noted, an implied covenant claim adds nothing to a breach of contract claim for wrongful termination. If there is an implied-in-fact right against no-cause termination, the implied covenant claim is superfluous. If the contract-in-fact is at will, the implied covenant claim is invalid. *See id.* at 350, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (" '[B]reach of the implied covenant cannot logically be based on a claim that [the] discharge [of an *at-will* employee] was made without good cause.' ") (emphasis added). The same applies to any claim that defendant breached plaintiff's contract rights by failing to investigate the grievance or give Mr. Lamke a chance to respond to the grievance. Those claims turn on the terms of the implied-in-fact contract as may ultimately be adjudicated in this case. The implied covenant claim adds nothing to any breach of contract claim Plaintiff may have.

Mr. Lamke points out, however, that the *Guz* court intimated there is an exception to the immateriality of the implied covenant:

> We do not suggest the covenant of good faith and fair dealing has no function whatever in the interpretation and enforcement of employment contracts. As indicated above, the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits. Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned. We confront no such claim here.

*Id.* at 353 n. 18, 100 Cal.Rptr.2d 352, 8 P.3d 1089.

While this statement in *Guz* leaves open the possibility of a claim for breach of the covenant of good faith and fair dealing under narrow circumstances, there are no allegations in the FAC as it currently stands that meet this narrow exception. *Cf. McCollum v. XCare.net, Inc.,* 212 F.Supp.2d 1142, 1153 (N.D.Cal.2002) (denying defendant's motion for summary judgment on claim for breach of the covenant of good faith and fair dealing because fact finder could conclude that defendant intended to frustrate plaintiff's legitimate expectations under a compensation plan— *i.e.,* entitlement to a commission—by reassigning an account on which plaintiff had worked and/or terminating her employment less than two weeks before the contract related to the account was signed). Plaintiff does not claim his termination was intended to deprive him of some contractual right other than that directly connected with his termination. *See Agosta v. Astor,* 120 Cal.App.4th 596, 15 Cal.Rptr.3d at 573 (2004) (denying implied covenant claim where plaintiff sought only losses "associated with the termination of his contract benefits").

The Court therefore dismisses Mr. Lamke's claim for breach of the covenant of good faith and fair dealing but shall give him leave to amend the claim if he can allege a claim viable under *Guz, McCollum* and *Agosta* as provided herein. The dismissal here does not affect Mr. Lamke's breach of *contract* claim, whether the breach is related to his termination without good cause, Sunstate's failure to investigate the grievance, Sunstate's failure to give Mr. Lamke an opportunity to respond to the grievance, or any other contractual right to which Plaintiff contends he is entitled.

## C. Fraud and Deceit

Mr. Lamke's claim for fraud is based on the allegation that he was induced into employment because Sunstate misrepresented to Mr. Lamke (1) that he would not be terminated as an employee as long as his work performance was satisfactory and (2) that he would be given a fair opportunity to respond to grievances. *See* FAC ¶ 23. According to Mr. Lamke, these misrepresentations "were made for the purpose of inducing [him] to enter into an employment contract with [Sunstate] and thereafter for the purpose of inducing [him] to continue performing said employment...." *Id.* ¶ 25.

Sunstate argues that the fraud claim should be dismissed (1) because wrongful termination ordinarily does not give rise to a fraud claim, (2) because the California Workers' Compensation Act ("WCA") preempts the fraud claim; and (3) because the fraud claim is not alleged with sufficient particularity pursuant to Rule 9.

The first argument is based on *Hunter v. Up–Right, Inc.,* 6 Cal.4th 1174, 26 Cal. Rptr.2d 8, 864 P.2d 88 (1993). There, the California Supreme Court held that

> wrongful termination of employment ordinarily does not give rise to a cause of action for fraud or deceit, even if some misrepresentation is made in the course of the employee's dismissal. Tort recovery is available only if the plaintiff can establish all the elements of fraud with respect to a misrepresentation that is separate from the termination of the employment contract, *i.e.,* when the plaintiff's fraud damages cannot be said to result from termination itself.

*Id.* at 1178, 26 Cal.Rptr.2d 8, 864 P.2d 88. The instant case, however, is different from *Hunter* because the FAC does not allege "fraudulent termination" but rather fraudulent inducement of employment contract.[1]

In *Lazar v. Superior Court,* 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996), plaintiff asserted a claim for fraudulent inducement of employment contract. According to plaintiff, defendant contacted him and tried to persuade him to leave his employment in New York and come work for defendant in Los Angeles. *See id.* at 635, 49 Cal.Rptr.2d 377, 909 P.2d 981. Plaintiff expressed concern about relocating to Los Angeles "as the move would entail relinquishing a secure job as president of the family company where he had worked all his adult life, separating his children from their friends at an important time of their lives and leaving his home of 40 years." *Id.* Consequently, "[a]s a condition of agreeing to relocate, [plaintiff] required [defendant]'s assurance that his job [with defendant] would be secure and would involve significant increases." *Id.* Defendant represented to plaintiff, *inter alia,* that he would continue to be employed so long as he performed his job and achieved goals, that he would enjoy continued advancement within the company, and that he would enjoy security and a strong future. *See id.* at 635–36, 49 Cal. Rptr.2d 377, 909 P.2d 981. Some time after relocating and working for defendant, defendant fired plaintiff. *See id.* at 636–37, 49 Cal.Rptr.2d 377, 909 P.2d 981. As a result of defendant's conduct and plaintiff's reliance on defendant's representations, plaintiff lost past and future income and employment benefits, was burdened with payments on Southern California real estate that he could no longer

---

1. To the extent Plaintiff seeks to assert a claim of fraud in connection with events leading up to his termination, such as the assertion that Mr. Lamke, as promised, did not have to take a drug test and then being fired because he did not take the drug test—any such claim inextricably tied to the challenged termination and is barred by *Hunter.*

afford, and experienced emotional distress. *See id.* at 637, 49 Cal.Rptr.2d 377, 909 P.2d 981.

Defendant argued to the California Supreme Court that plaintiff's fraud claim should be dismissed based on *Hunter,* but the court rejected the argument. It stated that fraud recovery is precluded

> only where "the result of [the employer]'s misrepresentation is indistinguishable from an ordinary constructive wrongful termination."

> Here, [defendant]'s alleged misrepresentation was not made in the course of [plaintiff]'s termination, but, rather, is separate from his termination. The damage [plaintiff] alleges does not, moreover, "result from [the] termination *itself,"* but from [defendant]'s misrepresentations (which allegedly came to light only at the time of termination).

*Id.* at 643, 49 Cal.Rptr.2d 377, 909 P.2d 981 (emphasis in original).

▉ The question is whether Mr. Lamke's claim for fraudulent inducement in the instant case falls under the *Lazar* exception to *Hunter.* It does not. Mr. Lamke does *not* seek the types of damages recognized under *Lazar* as recoverable for a claim of fraudulent inducement—*e.g.,* the costs of uprooting his family, expenses incurred in relocation, and the loss of security and income associated with his former employment. *See id.* at 648–49, 49 Cal. Rptr.2d 377, 909 P.2d 981. He does not seek reliance damages unrelated to his ultimate termination. Rather, Mr. Lamke seeks damages (such as loss of income and emotional distress) that flow from his termination. *See* FAC ¶¶ 28, 30. Because the damages sought are not "unrelated to the employee's discharge," *Agosta,* 120 Cal.App.4th at 607, 15 Cal.Rptr.3d 565, *Hunter,* not *Lazar,* applies. Mr. Lamke's claim for fraud must therefore be dismissed. To the extent Mr. Lamke is

claiming damages flowing from the fraud of, *e.g.,* being falsely promised he would have a chance to respond to the complaint or refuse drug test without consequence—damages other than those separate from the termination itself, such as humiliation and emotional distress of having his name disparaged in the workplace because of the grievance—any such fraud claim is preempted by the WCA. The WCA provides workers' compensation liability "in lieu of any other liability whatsoever ... shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment." Cal. Labor Code § 3600(a). With some exception, the remedy is exclusive.

▉ To determine whether there is preemption by the WCA, there is a two-step inquiry. First, a court must determine whether the plaintiff is seeking relief for an injury sustained and arising out of the course of employment. *See Shoemaker v. Myers,* 52 Cal.3d 1, 15, 276 Cal.Rptr. 303, 801 P.2d 1054 (1990). Second, "if the injuries did arise out of and in the course of employment, the exclusive remedy provisions apply notwithstanding that the injury resulted from the intentional conduct of the employer, and even though the employer's conduct might be characterized as egregious"—that is, unless the employer stepped out of its proper role or engaged in conduct of questionable relationship to the employment. *Id.* The California Supreme Court has explained the latter as "not stemming from a risk reasonably encompassed within the compensation bargain." *Id.* at 16, 276 Cal.Rptr. 303, 801 P.2d 1054. Examples of employer acts outside the normal employment relationship include fraudulent concealment of an employee's workplace injury, false imprisonment, and assault. *See Vacanti v. State Compensation Ins. Fund,* 24 Cal.4th 800,

821, 102 Cal.Rptr.2d 562, 14 P.3d 234 (2001).

■ As the Plaintiff seeks damages not only resulting from termination but possibly those incurred while Plaintiff was on the job, the first element is met. *See Spratley v. Winchell Donut House, Inc.,* 188 Cal.App.3d 1408, 234 Cal.Rptr. 121 (1987) (plaintiff "first sustained injury resulting from [defendant's] alleged fraud and discovered such alleged fraud only during the employment relationship and such injury arose out of and in the course of the employment relationship").

As to the second step in the preemption analysis, Mr. Lamke's fraud claim is "encompassed within the compensation bargain" (*Vacanti,* 24 Cal.4th at 823, 102 Cal. Rptr.2d 562, 14 P.3d 234) because the alleged fraud by Sunstate is closely connected to normal employer activity—*i.e.,* the employer's dealing with alleged employee misconduct.

Whether the gravaman of the grievance arose from off-duty conduct (Mr. Lamke claims he was inadvertently exposed to marijuana smoke at a party) is irrelevant to the preemption analysis. In *Shoemaker,* the California Supreme Court held that nonconsensual termination—as well as the acts leading up to it—is an injury arising out of and in the course of employment. *See Shoemaker,* 52 Cal.3d at 18, 20, 276 Cal.Rptr. 303, 801 P.2d 1054 (noting that demotion, transfer, and discipline are included within the ambit of workers' compensation and that nonconsensual termination of employment is indistinguishable from such actions and therefore must also be considered a normal and inherent part of employment).

If, in good faith, Mr. Lamke can assert a fraudulent inducement claim consistent with *Lazar* and not barred by *Guz* or preempted by the WCA, he may amend this claim. *Fermino v. Fedco, Inc.,* 7

Cal.4th 701, 708, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994).

### D. *Wrongful Termination in Violation of Public Policy*

■ "A tortious discharge claim requires that the employee be discharged in violation of a policy that is: (1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Sullivan v. Delta Air Lines, Inc.,* 58 Cal.App.4th 938, 942, 68 Cal. Rptr.2d 584 (1997) (internal quotation marks omitted). Sunstate argues that Mr. Lamke's claim for wrongful termination in violation of public policy should be dismissed (1) because it is time barred under the statute of limitations and (2) because he has failed to implicate a public policy delineated in either a constitutional or statutory provision.

#### 1. *Statute of Limitations*

■ In California, "[i]t is settled that an employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision gives rise to a tort action." *Barton v. New United Motor Mfg.,* 43 Cal. App.4th 1200, 1205, 51 Cal.Rptr.2d 328 (1996). Under current law, there is a two-year statute of limitations for torts. *See* Cal.Code Civ. P. § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."). That statute did not become effective until January 1, 2003, and a state appellate court has held that the statute is not retroactive. *See Krupnick v. Duke Energy Morro Bay, LLC,* 115 Cal.App.4th 1026, 1028, 1030, 9 Cal.Rptr.3d 767 (2004).

At the time that Mr. Lamke was injured— *i.e.*, terminated in or about August 22, 2002—the controlling law provided for a one-year statute of limitations. *See* Cal. Code Civ. Proc. § 340(3) (2001).

■ Even so, this does not mean that the one-year statute of limitations applies to Mr. Lamke's claim instead of the two-year. This is because—as Mr. Lamke argues—"[t]he extension of the statutory period within which an action must be brought [here, from one year to two] is generally held to be valid if made *before* the cause of action is barred." *Douglas Aircraft Co. v. Cranston*, 58 Cal.2d 462, 465, 24 Cal.Rptr. 851, 374 P.2d 819 (1962) (internal quotation marks omitted; emphasis added); *Thompson v. City of Shasta Lake*, 314 F.Supp.2d 1017, 1024 (E.D.Cal. 2004) ("Unless otherwise expressly excepted, a new statute which enlarges a statutory limitations period applies to matters that are not already barred by the original period at the time the new statute goes into effect.").

■ Because Mr. Lamke was terminated on or about August 22, 2002, the one-year statute of limitations means that he would have to file suit by August 22, 2003; however, as of January 1, 2003, the new statute of limitations, providing for two years, went into effect. Therefore, Mr. Lamke had until August 22, 2004, to bring suit. It is timely.

### 2. *Public Policy*

■ In his FAC, Mr. Lamke asserts that the public policy violated by his wrongful termination is reflected in (1) the

right to privacy under the California Constitution and the U.S. Constitution as well as the right against search and seizure under the U.S. Constitution and (2) California Labor Code § 1025. *See* FAC ¶ 32.

Presumably, Mr. Lamke is referring to the right to privacy and the right against search and seizure because his opposition brief focuses on case law discussing such rights in the context of drug testing of employees. The problem for Mr. Lamke is that the FAC does not claim he was subject to compelled drug testing in violation of the constitution by Sunstate. Rather the FAC asserts Mr. Lamke was simply accused of drug use on the job and was denied a chance to respond to the complaint. *See* FAC ¶ 4 ("[D]efendant was informed by an employee or other individual that plaintiff had engaged in drug use on the job . . . ."); *id.* ¶ 33 ("The alleged reason for the termination was the fact that plaintiff had been allegedly accused of drug use without substantiation and not related to job performance in any manner.").[2] Although the FAC allegations address the deprivation of his procedural rights, Mr. Lamke cites no applicable statute or constitutional provision which mandates a fair hearing or procedural right prior to termination in this context.

■ Mr. Lamke's reliance on Labor Code § 1025 is also unavailing. The statute provides:

Every private employer regularly employing 25 or more employees shall reasonably accommodate any employee who wishes to voluntarily enter and participate in an alcohol or drug rehabilitation

---

2. Mr. Lamke appears to have dropped the argument that there was a violation of public policy pursuant to the U.S. Constitution. At least, nothing in Mr. Lamke's opposition addresses the U.S. Constitution. In any event, as noted by Sunstate, Mr. Lamke's reliance on the *U.S. Constitution is unavailing because*

Sunstate is a private employer and not, *e.g.*, a state actor. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'").

program, provided that this reasonable accommodation does not impose an undue hardship on the employer.

Nothing in this chapter shall be construed to prohibit an employer from refusing to hire, or discharging an employee who, because of the employee's current use of alcohol or drugs, is unable to perform his or her duties, or cannot perform the duties in a manner which would not endanger his or her health or safety or the health or safety of others.

Cal. Labor Code § 1025. Aside from the fact that the statute deals with circumstances different from those alleged in the FAC—Mr. Lamke does not claim any failure by Sunstate to accommodate a drug problem—California case law holds that Labor Code § 1025 does not express a "substantial and fundamental" public policy against termination of employment. *See Sullivan*, 58 Cal.App.4th at 944, 68 Cal.Rptr.2d 584.

The Court therefore dismisses Mr. Lamke's claim for wrongful termination in violation of public policy. However, in view of the assertion in his opposition brief (containing factual assertions not made in the FAC), the Court shall give leave to Mr. Lamke to amend given his statements in his opposition that he was fired because he declined to take a drug test. *See* Opp'n at 11. It is conceivable that Mr. Lamke could state a public policy claim. *See Kraslawsky v. Upper Deck* Co., 56 Cal. App.4th 179, 182, 191–92, 65 Cal.Rptr.2d 297 (1997) (factual question existed as to whether defendant had reasonable cause to require employee to take drug test); *Semore v. Pool,* 217 Cal.App.3d 1087, 1098, 266 Cal.Rptr. 280 (1990) (case in which plaintiff was allegedly terminated for refusing to take a random drug test; holding that "the assertion of the constitutional right to privacy is the assertion of a funda-

mental principle of public policy which is sufficient to state a cause of action for wrongful termination").

### III. *CONCLUSION*

For the foregoing reasons, the Court dismisses the claims for breach of the covenant of good faith and fair dealing, fraud and deceit, and wrongful termination in violation of public policy. Mr. Lamke is given leave to amend his claims if he can in good faith state a claim as provided herein. Such amended complaint should be filed within twenty (20) days of the date of this order. Mr. Lamke is admonished that any amendment must comply with Fed. R.Civ.P. 11 and that the Court will not permit any further amendments absent a substantial showing of good cause.

IT IS SO ORDERED.