CELADOR INTERNATIONAL
LTD., et al., Plaintiffs,

v.

THE WALT DISNEY CO.,
et al., Defendants.

No. CV 04–3541 FMC(RNF).

United States District Court,
C.D. California.

Nov. 23, 2004.

Bridgette M. Taylor, Marcia J. Harris, Stanton L. Stein, Alschuler Grossman Stein and Kahan, Santa Monica, CA, for Plaintiffs.

Lisa N. Stutz, Martin D. Katz, Sheppard Mullin Richter and Hampton, Los Angeles, CA, for Defendants.

## ORDER GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

## ORDER GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE

COOPER, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss (docket no. 11)

and Motion to Strike (docket no. 10), filed October 20, 2004. The court has read and considered the moving, opposition, and reply documents submitted in connection with this motion. For the reasons and in the manner set forth below, the Court hereby **GRANTS AND DENIES IN PART** Defendants' Motion to Dismiss and **GRANTS AND DENIES IN PART** Defendants' Motion to Strike.

## I. Background

This case arises from a contract between Plaintiffs Celador International, Ltd. ("Celador") and Paul Smith ("Smith") and Defendants American Broadcasting Companies, Inc. ("ABC") and Buena Vista Television ("BVT"). (Compl.¶ 6). Plaintiffs are the creators and executive producers of the television game show, "Who Wants to Be a Millionaire" (the "Series"). Plaintiffs allege that after the Series was highly successful in the United Kingdom, they decided to expand its audience to North America. (Compl.¶¶ 6, 7). To that end, Plaintiffs entered into a contract in 1998 with ABC and BVT, both subsidiaries of Defendant Walt Disney Co. ("Disney") (Compl.¶¶ 4, 7), wherein the parties "agreed to become 50–50 partners with respect to the production, distribution and exploitation of the Series in North America." (Compl.¶ 7).

Plaintiffs allege that in exchange for certain rights to the concept and format of the Series, ABC and BVT agreed to (1) pay Celador fixed compensation and 50% of Defined Contingent Compensation ("Contingent Compensation") derived from the exploitation of the series; and (2) to engage Smith as an Executive Producer of the Series and accord him meaningful consultation rights regarding the creative elements of the Series. (Compl.¶ 7). Additionally, ABC and BVT agreed that the Series would be produced by ABC, BVT, an entity affiliated with ABC or BVT, or a third party. (Compl.¶ 8). ABC and BVT further agreed that the Series could be exhibited either on ABC, another national broadcasting network, or in any other television media. (Compl.¶ 8). Plaintiffs allege that the purpose in providing that the Series could be produced and exhibited through various channels was to ensure that the Series would be licensed for fair market value. (Compl.¶ 8). Plaintiffs further allege that the contract provided that Celador would have a number of approval rights, would maintain rights to merchandising, and would have certain reversion rights in and to the Series in the North American territory. (Compl.¶ 33). Plaintiffs characterize this agreement as a "relationship akin to a joint venture" because the "parties engaged in a single business enterprise for mutual profit with each party contributing to the venture." (Compl.¶ 33).

After the agreement was entered into, Plaintiffs allege that ABC and BVT assigned the production duties of the Series to their fellow subsidiary of Disney, Valleycrest Productions Ltd. ("Valleycrest"). (Compl.¶ 9). As part of the agreement with Valleycrest, Plaintiffs claim that ABC agreed orally to license the Series for an "imputed per-episode license fee equal to Valleycrest's per-episode production costs." (Compl.¶ 9). As a result, the network exhibition of the Series could never reach profits after production costs, distribution fees, distribution costs, overhead, interest, etc. were deducted from any gross receipts. (Compl.¶ 9).

According to Plaintiffs, the Series, broadcast on ABC, experienced enormous success in North America. (Compl.¶ 10). Eventually, "ABC's entire prime-time schedule revolved around the Series." (Compl.¶ 13). Plaintiffs allege that it is the custom and practice in the entertainment industry to renegotiate higher licens-

ing fees when a show is highly successful. (Compl.¶ 14). Nevertheless, BVT failed to negotiate with ABC for a higher license fee. (Compl.¶ 14). Plaintiffs claim that BVT failed to renegotiate because ABC and BVT are both affiliated entities and subsidiaries of Disney. (Comp.¶ 15). Plaintiff alleges that because ABC and BVT are required to share the profits derived from the Series with Celador, it is in Disney's best interest, as the parent company of ABC, BVT and Valleycrest, for the license with ABC to be less than the fair market price for the right to license the Series and for Valleycrest to inflate its production costs. (Compl.¶ 16). Plaintiffs allege, "Profits from lower production costs and increased revenues from the Series, which would have flowed to Celador if paid to BVT, remain instead with the Disney empire, in the form of cost savings and increased profits to Disney's affiliates." (Compl.¶ 16). Plaintiffs claim that Disney intentionally pressured and caused BVT and ABC to fail to renegotiate. (Compl.¶ 16).

Plaintiff also alleges that Disney caused BVT not to seek competitive deals from third-party production companies (Compl.¶ 18); not to seek competitive bids from other networks for the licensing of exhibition rights (Compl.¶ 21); and not to seek the highest price and best terms for the license fees for the prime-time version of the Series and in some instances, the syndicated version (Compl.¶ 22).

As a result of this alleged conduct, Plaintiffs filed suit on May 19, 2004, alleging (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) tortious interference with contract; (4) breach of fiduciary duty; (5) fraudulent inducement; (6) constructive fraud; (7) un-

fair competition under California Business and Professions Code § 17200; (8) an accounting; (9) copyright infringement;[1] and (10) declaratory relief. Defendants moved pursuant to Fed. R. Civ. P 12(b)(6) on October 20, 2004, to dismiss the claim for (1) breach of the covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) fraudulent inducement; (4) constructive fraud; and (5) declaratory relief. Defendants also claim that Smith lacks standing to sue on the contract and move to dismiss the breach of contract claim and breach of the covenant of good faith and fair dealing as to Smith. Defendants also moved to strike, pursuant to Fed.R.Civ.P. 12(f) certain portions of the complaint.

## II. Standard for Motion to Dismiss

The present Motion to Dismiss requires the Court to determine whether the complaint states any claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). The Court will not dismiss the claims for relief unless the plaintiffs cannot prove any set of facts in support of the claims that would entitle them to relief. *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998). In limiting its inquiry to the content of the complaint and matters of which the Court may take judicial notice, the Court must take the allegations of material fact as true and construe them in the light most favorable to the plaintiff. *See Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985); 2 *Moore's Federal Practice,* § 12.34[2] (Matthew Bender 3d ed.). Additionally, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 755 (9th Cir.1994).

---

**1.** The facts giving rise to the claim for copyright infringement are unrelated to this motion.

## III. Discussion

### A. Breach of the Covenant of Good Faith and Fair Dealing

■ Defendants argue that Plaintiffs' claim for Breach of the Covenant of Good Faith and Fair Dealing should be dismissed because it is duplicative of their breach of contract claim. A breach of the implied covenant of good faith and fair dealing involves something more than breach of the contractual duty itself. *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1394, 272 Cal.Rptr. 387 (1990). It involves unfair dealing, whether or not it also constitutes breach of a consensual contract term, prompted by a conscious and deliberate act that "unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Id.* at 1395, 272 Cal.Rptr. 387. Therefore, if "the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract clause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.*

■ There are three exceptions to this rule: (1) where a breach of a consensual contract claim is not alleged, *id.* at 1395, 272 Cal.Rptr. 387; (2) where the plaintiff is seeking recovery in tort, *id.*; and (3) where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits, *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 353 n. 18, 100 Cal. Rptr.2d 352, 8 P.3d 1089 (2000); *Lamke v. Sunstate Equipment Co., LLC*, No. C–03–4956, 2004 WL 2125869 (N.D.Cal. Sept.22, 2004) (applying California law).

The third exception is most relevant here. In *Guz*, the court stated that the purpose of the implied covenant of good faith and fair dealing was "to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made." Guz*, 24 Cal.4th at 349, 100 Cal.Rptr.2d 352, 8 P.3d 1089. The court gives the example of an employer terminating an at-will employee (not itself a breach of contract) in order to cheat the worker out of another contract benefit to which he or she is clearly entitled, such as compensation already earned. *Id.* at 353 n. 18, 8 P.3d 1089. The court in *Guz* does not imply that in this example, the employee could not also sue for breach of contract based on the failure to provide compensation. This is true even though the claims would be based on the same facts (failure to provide compensation) and would claim the same damages (lost wages, etc.). The example can be distinguished from a situation in which the employer terminates an at-will employee, and the employee claims that (1) she was not at-will, and so a contract was breached; and that (2) the termination violated the covenant of good faith and fair dealing. *See Guz*, 24 Cal.4th at 349–50, 100 Cal.Rptr.2d 352, 8 P.3d 1089.

Here, Plaintiffs allege that Defendants violated the contract in several ways. Plaintiffs allege: (1) Defendants entered into agreements with affiliated entities on terms that are not fair and reasonable; (2) Defendants have permitted affiliated entities to become delinquent in their obligations to make payments in connection with the production and distribution of the Series; (3) Defendants have refused to provide documentation to substantiate that the terms of their dealings with affiliated entities are fair and reasonable; (4) Defendants have failed to properly exploit the Series and pay Plaintiffs their share of revenues; (5) Defendants have failed to renegotiate contracts in a manner consistent with industry custom; and (6) Defendants have inflated production costs.

(Compl. ¶ 61). Plaintiffs allege that these actions violated the covenant of good faith and fair dealing because they intentionally frustrated Plaintiffs' enjoyment of their rights under the contract. (Compl. ¶ 65).

Even if Plaintiffs are not ultimately successful on their breach of contract claim, they may still be able to prevail on their breach of the covenant of good faith and fair dealing claim. Even if the fact finder concludes that the consensual terms of the contract did not impose such obligations on Defendants, the fact finder could conclude that the actions of Defendants frustrated a benefit of the contract-the benefit of receiving Contingent Compensation from the Series.

Defendants argue that because the claim is based on the same facts as the breach of contract claim and seeks the same remedy, it is superfluous. *See Bionghi v. Metropolitan Water District,* 70 Cal.App.4th 1358, 1370, 83 Cal.Rptr.2d 388 (1999). However, such claims will always be based on the same facts; a certain set of circumstance gives rise to a lawsuit. They will always seek the same remedy; the same remedies are available for both claims. Therefore, the Court should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought. Rather, the challenge brought by *Careau* and its progeny is to distinguish two claims based on the same facts. If they cannot be distinguished, then the natural conclusion is that they are duplicative. Plaintiffs have distinguished their claims here. Plaintiffs allege that Defendants' actions breached the contract. If not, the actions, allegedly taken in bad faith, frustrated the *actual* benefits of the contract. *See Lamke,* 2004 WL 2125869, *3 (allowing leave to amend to make such a distinction). The breach of the covenant of good faith and fair dealing claim, therefore, is not superfluous.

## B. Breach of Fiduciary Duty

■ Defendants argue that Plaintiffs have not (and cannot) allege a fiduciary relationship between the parties. Defendants argue that only a debtor/creditor relationship was formed between the parties that it is "purely contractual." Defendants further argue that "a contingent entitlement to future compensation within the exclusive control of one party does not make that party a fiduciary in the absence of other indicia of a confidential relationship." *Wolf v. Superior Court,* 106 Cal. App.4th 625, 107 Cal.App.4th 25, 130 Cal. Rptr.2d 860 (2003). The contract between the parties is one in which a contingent entitlement to future compensation is within the exclusive control of one party: Plaintiffs' Contingent Compensation depends on the actions of Defendants. The question, then, is whether there are "other indicia of a confidential relationship" in this case.

■ The existence of a joint venture gives rise to a fiduciary or confidential relationship. *Wolf,* 107 Cal.App.4th at 30, 130 Cal.Rptr.2d 860; *Nelson v. Abraham,* 29 Cal.2d 745, 750, 177 P.2d 931 (1947). A joint venture is "an undertaking by two or more persons jointly to carry out a single business enterprise for profit." *April Enterprises, Inc. v. KTTV,* 147 Cal.App.3d 805, 819, 195 Cal.Rptr. 421 (1983). The necessary elements for its creation are (1) a joint interest in a common business; (2) an understanding to share profits and losses; and (3) a right to joint control. *Id.* Whether a joint venture exists is a question of fact. *Nelson,* 29 Cal.2d at 750, 177 P.2d 931. "[T]he parties may create a joint venture despite an express declaration to the contrary." *April Enterprises,* 147 Cal.App.3d at 820, 195 Cal.Rptr. 421.

Defendants argue that no such relationship exists. In support of this argument,

Defendants quote from the contract itself: [2]

> Nothing herein contained shall constitute or give rise to a partnership between, or joint venture of, the parties hereto or constitute either party the agent of the other. Neither party shall hold itself out contrary to the terms of this paragraph, and neither party shall become liable for the representation, act or omission of the other contrary to the provisions thereof.

Defendants rely on *Wolf*, in which a similar contractual provision existed, and the Court concluded there was no joint venture. *See Wolf*, 107 Cal.App.4th at 28 n. 5, 130 Cal.Rptr.2d 860. However, as *April Enterprises* states, this contractual term is not determinative of the question. In *Wolf*, unlike this case, the plaintiff conceded there was no allegation in the complaint to show a joint venture and admitted that the complaint could not be amended to state facts alleging such a relationship. *Id.* 30, 130 Cal.Rptr.2d 860. Here, Plaintiffs claim there are such allegations.

Plaintiffs allege that their relationship with Defendants was "akin to a joint venture." (Compl.¶ 33). They allege that the parties had a joint interest in the business: while the Defendants had rights to exploit the Series, Plaintiffs possessed reversionary rights and rights to merchandising. Plaintiffs allege that the parties shared profits and losses because the Contingent Compensation was dependent on the profits of the Series. Finally, Plaintiffs allege that they had approval rights, and that Smith had meaningful consultation rights,

which tends to allege joint control. Whether these allegations, if proven, amount to a joint venture is a question of fact. At this juncture, the Court must accept the allegations as true. Plaintiffs' claim for breach of fiduciary duty will not be dismissed because Plaintiffs should be given the opportunity to prove a joint venture existed by virtue of the conduct of the parties.

Plaintiffs allege several other bases for finding a fiduciary relationship; the Court rejects each of those other grounds. First, the duty to account for profits does not give rise to a fiduciary relationship. *Wolf*, 107 Cal.App.4th at 33, 130 Cal.Rptr.2d 860. Second, the "retention of rights" is not sufficient to establish a fiduciary relationship. *Wolf* states as much when it concludes, "If those agreements, where no ownership rights over property are transferred, do not create a fiduciary relationship, neither do contracts ... involving the sale of all rights to the new owner to exploit as it sees fit." *Id.* Third, a joint interest in profits, or the accrual of profits for mutual benefit, does not create a fiduciary relationship. That was the holding of *Wolf. Id.* at 27, 130 Cal.Rptr.2d 860. Therefore, in keeping with *Wolf*, the Court concludes that a relationship short of a joint venture is not sufficient to sustain Plaintiffs' claim for breach of fiduciary duty. However, because Plaintiffs have alleged a joint venture, Defendants' motion is denied.[3]

### C. Fraud

Defendants argue (1) that Plaintiffs have failed to plead fraud with partic-

---

**2.** The Court may consider the contract even though it is not incorporated into the complaint. *See Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998) (in ruling on motion to dismiss, court may consider document not explicitly incorporated in complaint and not attached to complaint, but authenticity of which is not questioned and on which complaint necessarily relies).

**3.** Defendants' motion to dismiss the constructive fraud claim, depending on whether a fiduciary relationship exists, is therefore also denied.

ularity;(2) that Plaintiffs' allegations contradict the language of the contract; (3) that Plaintiffs have failed to allege facts showing that Defendants did not intend to keep their promise at the time it was made.

### 1. Fraud with Particularity

█ Under Fed.R.Civ.P. 9(b), "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule requires the plaintiff to allege such circumstances so the defendant can prepare an adequate answer from the allegations. *Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir.1973). The plaintiff should include the time, place and content of the alleged misrepresentations. *Decker v. GlenFed, Inc.,* 42 F.3d 1541, 1548 (9th Cir.1994). A plaintiff should set forth reasons why the statements were false. *Id.* Additionally, the plaintiff should, where possible, identify who made the representations. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir.1987) (holding that plaintiff should identify, when possible, the role of individual defendants in the alleged fraud).

Defendants argue that Plaintiffs' allegations lack the requisite specificity. Plaintiffs allege that "[p]rior to the execution of the Agreement on December 1, 1998, representatives of ABC and BVT made several representations to Celador and Smith that, as part of the Agreement, ABC and BVT would seek to maximize the profits in which the parties were to share under the agreement." (Compl.¶ 88). These allegations are not specific enough to meet the requirements of 9(b). Plaintiffs need to identify with more specificity when the statements were made. "Prior to December 1, 1998" can mean anytime-days, months, years-prior to that date. This time frame is too broad. Next, Plaintiffs

must identify where the statements were made. Finally, Plaintiffs must identify who made the statements and to whom they were made. "Representatives of ABC and BVT" is too broad. It does not place Defendants on notice as to who in their organizations may have made the statements. The Complaint does not identify to whom the statements were made. The Court therefore grants Defendants' motion to the extent it challenges the sufficiency of the allegations concerning the circumstances under which the allegedly false representations were made.

█ Defendants also argue, however, that allegations of fraud cannot be made on information and belief. Plaintiffs make several of their allegations on information and belief. Generally, allegations of fraud based on information and belief are not sufficient to meet the requirements of 9(b). *Wool,* 818 F.2d at 1439. However, the "rule may be relaxed as to matters peculiarly within the opposing party's knowledge." *Id.* Then, the particularity requirement is satisfied if the allegations are accompanied by a statement of facts upon which the belief is founded. *Id.*

█ Here, Plaintiffs allege on information and belief that at the time the representations were made ABC and BVT already intended to assign production duties under the contract to Valleycrest without seeking competitive bids. (Compl.¶ 89). They also allege that ABC and BVT already intended to license the Series to ABC without shopping it to other national television broadcast networks, that they already intended to set the license fee for the Series equal to Valleycrest's production costs, and that accordingly, the representations that Defendants would maximize profits were false when made. Matters of Defendants' intent are clearly within Defendants' peculiar knowledge, and so Plaintiffs meet the 9(b) requirement by

stating the facts upon which their belief is founded. These are allegations that establish why Plaintiffs believe the representations made to them were false. When it was in Defendants' complete control to seek competitive bids-and so maximize profits as they allegedly promised-they did not. From this, it can be inferred that Defendants never intended to seek competitive bids or profitable licensing fees. Plaintiffs have sufficiently stated the basis for their allegations on information and belief.

### 2. Conflicting Allegations

■■ Defendants contend that Plaintiffs could not have been fraudulently induced to enter into the contract because the terms of the contract itself contradict the alleged misrepresentations. Defendants claim that the contact specifically provides that "ABC/BVT shall have no obligation to produce, complete, release, distribute, advertise or exploit any program ..." and that "there is no guarantee whatsoever that any sums will be generated and/or become payable to" Celador. Additionally, the contract provides:

> Producer [Celador] as a participant in Defined Contingent Compensation ("Participant") acknowledges and agrees that the definition, computation, accounting and payment (if any, pursuant to the terms hereof) of speculative contingent compensation has been specifically negotiated by Participant's representatives and Participant has a full understanding of the terms of the agreement and Defined Contingent Compensation and that no representations other than those which have been made set forth in writing and executed by all parties to this agreement.

First, the provision that Defendants have no obligation to produce the Series is not inconsistent with a promise to maximize profits. Clearly Defendants *did* produce the Series. Having decided to do so, they would be, as Plaintiffs allege, under an obligation to maximize the profitability of the Series. Second, Plaintiffs' acknowledgment that they understand the Contingent Compensation provisions and that the provisions are set forth in the contract is not inconsistent with a promise to maximize profits. The provision cited by Defendants does not explain what the "terms of the agreement and Defined Contingent Compensation" are or what exactly Plaintiffs' understanding was. There is no inconsistency that precludes fraud in the inducement.

### 3. Defendants' Intent to Keep Promises

■■ Defendants claim that in order to state a claim for promissory fraud, Plaintiffs must plead facts, which if true, would demonstrate that the promisor had an intention at the time of promise not to keep it. In *Richardson v. Reliance Nat'l Indemnity Co.*, No. C 99–2952 CRB, 2000 WL 284211, *4 (N.D.Cal.2000), the court required the plaintiff to plead facts to show that the allegedly fraudulent promise was made without the intention to perform. This requirement was in keeping with the requirement, as discussed above, that a plaintiff plead facts to show why the statement was false. *See id.*

As noted in the discussion regarding pleading on information and belief, Plaintiffs have sufficiently alleged why they believe the representations were false when made. This is not a situation like that in *GlenFed* or other securities fraud cases, where intervening events could explain why a statement turned out not to be true. *See GlenFed,* 42 F.3d at 1548–49. Whether to seek competitive bids was fully within Defendants' control at all times. The allegation that they did not seek competitive bids is sufficient to create the inference

that they never intended to maximize profits for Plaintiffs.

Defendants' motion to dismiss the fraud claim is granted, but only insofar as Plaintiffs must plead the circumstances surrounding the representations with more specificity. Plaintiffs are granted leave to amend.

### D. Declaratory Relief

 Defendants argue that the Court should exercise its discretion not to hear Plaintiffs' claim for declaratory relief because declaratory relief will serve no useful purpose. In considering whether to hear a claim for declaratory relief, courts consider two criteria: (1) if the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue;" and (2) if "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw–Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966). When the issues raised by the prayer for declaratory relief will be completely disposed of in other litigation, it may be appropriate to decline to hear the action. *Id.* at 343. Under such circumstances, the judgment will "serve no useful purpose." *Id.* Similarly, if a claim for declaratory relief presents merely factual questions that will not terminate the dispute between the parties, it may be appropriate to decline the action. *Newton v. State Farm Fire & Casualty Co.*, 138 F.R.D. 76, 79 (E.D.Va.1991).

Here, Plaintiffs ask for multiple declarations. First, Plaintiffs ask for a declaration that Defendants have entered into agreements with affiliated entities on terms not fair and reasonable and that do not represent arms-length prices. This is a factual question that will resolved in the breach of contract action. (Compl.¶ 61(a)). Second, Plaintiffs ask for a declaration that Defendants have permitted affiliated entities who have licensed the Series to become delinquent in the obligations to make payments. This, too, will be resolved by the breach of contract action. (Compl.¶ 61(b)). Third, Plaintiffs seek a declaration that Defendants have failed to provide documentation that the terms of their dealings and agreements with affiliated entities are fair and reasonable, which also will be resolved by the breach of contract action. (Compl.¶ 61(c)). The fourth request is that Defendants confirm their continuing obligation to meaningfully consult with Smith in connection with creative matters. It is not clear what the purpose of this "confirmation" is aside from the effect it may have on the question of whether there is a joint venture between the parties. Whether Defendants have an obligation to meaningfully consult will be resolved by the breach of fiduciary claim. (Compl.¶ 82(a)). The fifth request is that Defendants confirm their continuing obligation to accord Celador its rights of approval. Again, Plaintiffs do not allege elsewhere in their complaint that Defendants are failing to grant Celador rights of approval. Therefore, the purpose of this declaration is unclear. To the extent it bears on the question of a joint venture, it will be resolved there. Sixth, Plaintiffs ask for a declaration that Defendants have failed to properly exploit the Series and account and pay to Celador its share of revenues generated. This will be resolved by the breach of contract action. (Compl.¶ 61(d)). Seventh, Plaintiffs ask for a declaration that Defendants have breached the covenant of good faith and fair dealing. This, clearly, will be answered by resolution of that claim. Eighth, Plaintiffs ask for a declaration that contrary to industry custom, Defendants have failed to renegotiate for higher license fees. This will be resolved by the breach of contract claim. (Compl.¶ 61(e)).

Ninth and finally, Plaintiffs ask for a declaration that Defendants continue to infringe upon Plaintiff Lusam's copyrights. This will be resolved by the copyright infringement action.

Each of the declarations Plaintiffs seek will be resolved during other phases of the lawsuit. It is not clear how the declarations will clarify the relationships of the parties. Plaintiffs argue that the declarations are needed because the contract is ongoing. It is not clear how a declaratory judgment would resolve the issues raised while a jury verdict would not. Plaintiffs have prayed for an injunction. If, at a later point, the Court determines that an injunction is appropriate, it will be issued. That will resolve the concerns raised by the ongoing nature of the contract. Declaratory relief is unnecessary. Therefore, the claim for declaratory relief is dismissed.

### E. Standing of Smith

■ Defendants argue that Smith has waived his right to bring a contract action against Defendants. Defendants rely on a provision in the contract wherein Smith agrees to "look solely" to Celador for "any and all compensation to which [he] may be entitled." Defendants cite no authority for the proposition that such a waiver destroys a party's standing. Each case cited by Defendants either does not discuss the effect of the waiver, *see In re Enron Corp.*, 302 B.R. 463 (Bkrtcy.S.D.N.Y.2003) (mentioning waiver only in passing), or does not discuss the waiver as it affects standing. *See Bass v. John Hancock Mutual Life Ins. Co.*, 10 Cal.3d 792, 112 Cal.Rptr. 195, 518 P.2d 1147 (1974); *California Medical Ass'n v. Aetna U.S. Healthcare of California*, 94 Cal.App.4th 151, 114 Cal.Rptr.2d 109 (2001) (discussing effect of waiver, but not effect on waiver on standing); *Coates v. Newhall Land & Farming, Inc.*, 191 Cal.App.3d 1, 236 Cal.Rptr. 181 (1987) (discussing waiver in context of summary judgment motion). The provision at issue may or may not preclude Smith from prevailing on the merits. That is not the question raised by Defendants' motion. Smith has standing to bring the lawsuit even if he does not ultimately prevail.

### IV. Standard for Motion to Strike

Fed.R.Civ.P. 12(f) permits the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This motion is disfavored because it "proposes a drastic remedy." 2 *Moore's Federal Practice*, § 12.37[1] (Matthew Bender 3d ed).

### V. Discussion

Defendants move to strike (1) allegations in Plaintiffs' complaint that Defendants were obligated to renegotiate their licensing agreements; (2) allegations that Plaintiffs' relationship with Defendants was akin to a joint venture" or partnership; (3) Plaintiffs' prayer for disgorgement of profits under Cal. Bus. & Prof. Code § 17200 insofar as it asks for nonrestitutionary disgorgement; (4) Plaintiffs' allegation that it is bringing its § 17200 claim "on behalf of the general public."

### A. Obligation to Renegotiate

■ The allegations that Defendants had an obligation to renegotiate, imposed by industry custom, and that they failed to renegotiate, whether or not they are true, are not "redundant, immaterial, impertinent, or scandalous." If true, they tend to show Defendants breached their agreement and the allegations are therefore relevant to the issues raised in the case.

Defendants argue that the allegations contradict the terms of the contract. Specifically, they argue that the contract (1) allows the Series to be exhibited on ABC or any other television media; (2) permits

the Series to be produced at Defendants' discretion; and (3) grants Defendants control over "all business and creative decisions with respect to the Pilot and the Series." Whether these provisions preclude an obligation to renegotiate in good faith is a matter of interpretation. They do not directly contradict Plaintiffs' allegations. Therefore, they will not be stricken.

## B. Joint Venture Allegations

■ Defendants argue that the allegation that the contract was akin to a joint venture should be stricken. These allegations are not "redundant, immaterial, impertinent, or scandalous." If true, they tend to establish a fiduciary relationship between the parties, which is relevant to the breach of fiduciary claim. As discussed above, the literal terms of the contract do not necessarily determine the nature of the relationship between the parties. Therefore, the provision in the contract that states that the parties are not entering into a joint venture is not controlling on this issue. Therefore, these provisions will not be stricken.

## C. Disgorgement of Profits

■ Defendants ask that the Court to strike two provisions of the complaint wherein Plaintiffs pray for disgorgement of profits under § 17200. (Compl.¶ 106(a), Prayer, ¶ 4). Defendants argue that disgorgement, apart from restitution, is not available under § 17200. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003). Plaintiffs claim they are not seeking disgorgement apart from restitution. The language of the Complaint is consistent with this stance. The Complaint states that "[the] unfair conduct by Defendants has wrongfully permitted Disney to retain within its corporate empire revenues from the Series that rightfully belong

to Celador." It then states that Celador is entitled to "restitution or disgorgement of profits derived from the acts" of Defendants." (Prayer ¶ 4, Compl. ¶ 106(a)). The complaint is seeking funds that "rightfully belong to Celador"-in other words, it is seeking restitution. The term "disgorgement of profits," as it is used in the Complaint, sounds like an alternative term for "restitution." Because the Plaintiffs are not seeking any remedy to which they would not be entitled if they prevail, the allegations will not be stricken.

## D. Action of Behalf of the Public

■ Plaintiffs allege that "Celador and Smith assert [this § 17200] claim against all Defendants ... on behalf of themselves as on behalf of the general public." Defendants argue that notwithstanding the language of Cal. Bus. & Prof.Code § 17200 *et seq.* allowing actions to be brought on behalf of the public, actions cannot be brought on behalf of the public in federal court. Plaintiffs do not contest this. Therefore, the phrase "as well as on behalf of the general public" is stricken from the Complaint. (Compl.¶ 104).

## VI. Conclusion

Defendants' motion to dismiss the claim for breach of the covenant of good faith and fair dealing is **DENIED**. The motion to dismiss the claim for breach of fiduciary duty is **DENIED**. The motion to dismiss the fraud claim is **GRANTED WITH LEAVE TO AMEND**. The motion to dismiss the claim for constructive fraud is **DENIED**. The motion to dismiss the claim for declaratory relief is **GRANTED WITH LEAVE TO AMEND**. The motion to dismiss Smith for lack of standing is **DENIED**. The motion to strike is **DENIED IN PART** and **GRANTED IN PART**. The allegation that the § 17200 claim is brought on behalf of the general

public is stricken from the Complaint. Plaintiff's amended complaint is due within twenty days from the date of this order.